123 F.3d 877
 38 Fed.R.Serv.3d 685, 21 Employee Benefits Cas. 1873
 Charles BITTINGER, Individually and as a Representative of
those Similarly Situated, a Class,
Plaintiff-Appellant/Cross-Appellee,
v.
TECUMSEH PRODUCTS COMPANY; Tecumseh Division Group
Insurance Plan for Retirees,
Defendants-Appellees/Cross-Appellants.
 Nos. 96-1231, 96-1233, 96-1234 and 96-1260.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 24, 1997.
Decided Aug. 14, 1997.
Rehearing and Suggestion for Rehearing En Banc Denied Oct.
21, 1997.*
 
 Ann Curry Thompson (argued and briefed), Kelman, Loria, Downing, Schneider & Simpson, Detroit, MI, for Plaintiff-Appellant/Cross-Appellee.
 Diane M. Soubly (argued and briefed), Vercruysse, Metz & Murray, Bingham Farms, MI, for Defendants-Appellees/Cross-Appellants.
 Before: MERRITT, RYAN, and GIBSON,** Circuit Judges.
 MERRITT, J., delivered the opinion of the court, in which GIBSON, J., joined. RYAN, J. (pp. 885-90), delivered a separate dissenting opinion.
 MERRITT, Circuit Judge.
 
 SUMMARY
 
 1
 In this ERISA and Labor-Management Relations Act class action, the plaintiff class, made up of former hourly workers at the Tecumseh Products Company, appeals the district court's dismissal of its claims based on the doctrine of res judicata. The plaintiffs also appeal the district court's rejection of their jury trial request. The defendants cross-appeal on the theory that the district court should not have certified the plaintiff class. We decide in order the questions of (1) whether under the doctrine of "virtual representation" res judicata should be expanded to cover plaintiffs who were not parties or in "privity" with a party in a previous action; (2) whether the plaintiffs are entitled to a jury trial in an action for a declaration and award of retirement benefits; and (3) whether certification of a class action is proper under Rule 23 when the overall question of entitlement to retirement benefits is common to all class members but the availability of defenses and the amount of benefits may vary.
 
 I.
 
 2
 Charles Bittinger and the other members of the plaintiff class are retired hourly workers of the defendant, Tecumseh Products Company. A series of collective bargaining agreements governed the relationship between Tecumseh and the plaintiffs' former union, the United Product Workers Union. In June of 1991, after a collective bargaining period in which the union declared that it would no longer represent the interests of the retirees, Tecumseh notified the retirees that their insurance benefits would be terminated upon the expiration of the 1988-1991 collective bargaining agreement. The company simultaneously offered them life and health insurance under a new group plan, only partially funded by the company. In order to participate in the new, partially funded plan, they were required to sign releases of claims against the company. Some but not all of the eventual class members signed the releases.
 
 
 3
 The retirees soon organized in response to the company's actions. On June 5, 1991, they called a mass meeting attended by 500 retirees. A formal organization, the Unified Tecumseh Products Hourly Retirees, grew out of this meeting. The organization became a Michigan nonprofit corporation. Its Articles of Incorporation state as the organization's purpose "[t]he unification of approximately 1200 hourly retirees from [the company] to seek legal advice for the reinstatement of promised benefits." Articles of Incorporation (J.A. 1428). Eventually, three of its members, Spaulding, Carroll, and Bishop, brought a lawsuit against Tecumseh. During this litigation, the Unified Retirees created mailing lists, held meetings, and collected money from its members--including Bittinger, the named plaintiff in the instant case, who contributed $20 several times--to support the activities of the group, including the suit. The group had attorneys come speak to its members and authorized the inclusion of its members as a class in the suit. It sent a newsletter to its members announcing that a suit had been filed and requesting money and affidavits. In early 1993, however, the district court in the Spaulding litigation granted Tecumseh's motion for summary judgment and dismissed the action without a trial. Because it dismissed the case, the district court did not reach the plaintiffs' motion for class certification, and the class of retirees was never certified.
 
 
 4
 Shortly thereafter, the named plaintiff in this suit, Bittinger, brought the current action under ERISA, 29 U.S.C. §§ 1001-1461, and the Labor-Management Relations Act, 29 U.S.C. §§ 141-187. The district court granted the plaintiff's motion for class certification under Rule 23, but then granted the defendant's motion for summary judgment on the ground that the suit is barred by the doctrine of res judicata (claim preclusion). The plaintiffs appeal the district court's grant of summary judgment and its decision that they are not entitled to a jury trial on their statutory claims. Tecumseh cross-appeals on the class certification issue.
 
 II.
 
 5
 Tecumseh Products argues, and the court below held, that the current suit should be barred under the doctrine of res judicata, or claim preclusion. Under this Court's articulation of res judicata, a claim will be barred by prior litigation if the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. Kane v. Magna Mixer Co., 71 F.3d 555, 560 (6th Cir.1995), cert. denied, 517 U.S. 1220, 116 S.Ct. 1848, 134 L.Ed.2d 949 (1996); Sanders Confectionery Prods. v. Heller Financial, Inc., 973 F.2d 474, 480 (6th Cir.1992).
 
 
 6
 It is clear that the Spaulding litigation cannot be considered a prior action between the same parties, because the class was not certified in Spaulding and because neither the plaintiff nor the Unified Tecumseh Products Hourly Retirees organization became parties in either case. Thus, our focus in the instant case is only on the scope of res judicata's "privity" element.
 
 
 7
 Last Term, in a unanimous opinion written by Justice Stevens, the Supreme Court articulated principles of due process governing the permissible constitutional scope of the doctrine of res judicata. Richards v. Jefferson County, 517 U.S. 793, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996). The Supreme Court of Alabama had held that the taxpayer plaintiffs, who contested the constitutionality of a local occupational tax, were barred by a previous judgment by the Alabama Court upholding the tax. The United States Supreme Court found that the Alabama Court's decision violated due process because the plaintiffs there were not parties to the previous proceedings and because, like the plaintiffs in the instant case, they were not members of a certified class, nor did they control the previous litigation.
 
 
 8
 In the course of its decision, the Supreme Court, citing with approval the Restatement of Judgments, said:
 
 
 9
 [T]hese principles [of res judicata] do not always require one to have been a party to a judgment in order to be bound by it. Most notably, there is an exception when it can be said that there is "privity" between a party to the second case and a party who is bound by an earlier judgment. For example, a judgment that is binding on a guardian or trustee may also bind the ward or the beneficiaries of the trust. Moreover, although there are clearly constitutional limits on the "privity" exception, the term "privity" is now used to describe various relationships between litigants that would not have come within the traditional definition of the term. See generally Restatement (Second) of Judgments, ch. 4 (1980) (Parties and Other Persons Affected by Judgments).
 
 
 10
 Id. at ----, 116 S.Ct. at 1766.
 
 
 11
 The "privity" section of the Restatement, the section referred to with approval in Richards, is section 41 of the Restatement (Second) of Judgments. It does not permit the extension of the doctrine to the instant case because the plaintiff was not a class member bound by a previous adjudication and does not fit any other category of persons "represented" by a party in the previous action:
 
 Person Represented by a Party
 
 12
 (1) A person who is not party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party. A person is represented by a party who is:
 
 
 13
 (a) The trustee of an estate or interest of which the person is a beneficiary; or
 
 
 14
 (b) Invested by the person with authority to represent him in an action; or
 
 
 15
 (c) The executor, administrator, guardian, conservator, or similar fiduciary manager of an interest of which the person is a beneficiary; or
 
 
 16
 (d) An official or agency invested by law with authority to represent the person's interest; or
 
 
 17
 (e) The representative of a class of persons similarly situated, designated as such with the approval of the court, of which the person is a member.
 
 
 18
 RESTATEMENT (SECOND) OF JUDGMENTS § 41(1) (1980) (emphasis added).
 
 
 19
 After referring to the Restatement, the Court noted that "in addition," the Court in Martin v. Wilks, 490 U.S. 755, 761-62, 109 S.Ct. 2180, 2184-85, 104 L.Ed.2d 835 (1989), recognized "an exception to the general rule when, in certain limited circumstances, a person, although not a party, has his interests adequately represented by someone with the same interests who is not a party." Richards, 517 U.S. at ----, 116 S.Ct. at 1766. For this proposition, the Court invoked Hansberry v. Lee, 311 U.S. 32, 41-42, 61 S.Ct. 115, 117-18, 85 L.Ed. 22 (1940), Rule 23 of the Federal Rules of Civil Procedure, and Montana v. United States, 440 U.S. 147, 154-55, 99 S.Ct. 970, 973-74, 59 L.Ed.2d 210 (1979). None of this authority supports the broad notion of "virtual representation" upon which the district court relied. Indeed, Rule 23 in particular governs cases such as the instant one, where an individual is said to represent the interests of a class. Here, the requirements of Rule 23 were not met: The Spaulding court did not certify the case as a class action.
 
 
 20
 In deciding the instant case below, the district court did not have the benefit of the Supreme Court's opinion in Richards giving a more narrow scope to the doctrine of res judicata than was previously thought to be the case under the so-called "virtual representation" standard recently developed by some courts. See, e.g., NAACP v. Hunt, 891 F.2d 1555 (11th Cir.1990); Aerojet-General Corp. v. Askew, 511 F.2d 710 (5th Cir.1975). The "virtual representation" standard converts the traditional doctrine of res judicata from a relatively clear set of rules to a vague principle relying on balancing the equities as a result of a close inspection and analysis of the relationship between the parties in each individual case. A court attempting to apply "virtual representation" must examine the relationship between the parties to the current suit and parties to the previous suit and look for and balance a variety of elements--including whether the facts demonstrate a close nonlitigating relationship, participation, apparent acquiescence, discussions about the first action, deliberate maneuvering to avoid the effects of the first action, and an express or implied legal relationship in which parties to the first suit are said to be "accountable" to parties to the second. As the Court said in Gonzalez v. Banco Central Corp., 27 F.3d 751 (1st Cir.1994), the doctrine "is best understood as an equitable theory rather than as a crisp rule with sharp corners and clear factual predicates, such that a party's status as a virtual representative must be determined on a case-by-case basis." Id. at 756. See also Tyus v. Schoemehl, 93 F.3d 449, 454 (8th Cir.1996), cert. denied, 520 U.S. 1166, 117 S.Ct. 1427, 137 L.Ed.2d 536 (1997) ("Because of the fact-intensive nature of these inquiries, there is no clear test that can be employed to determine if virtual representation is appropriate.").
 
 
 21
 "Virtual representation" is said by some scholars to be a useful tool for broadening the finality of judgments and enhancing the efficient administration of justice. Bone, Rethinking the "Day in Court" Ideal and Non-Party Preclusion, 67 N.Y.U. L.REV. 193, 239 (1992) (discussing an efficiency-based theory of preclusion). Ironically, however, its expansion increases the burden on judges, who must apply its multi-factored balancing test to the facts of each case. In this area of the law that must be applied frequently, "crisp rules with sharp corners" are preferable to a round-about doctrine of opaque standards easily manipulated to reach a preferred result. Rules are more predictable and less elastic than standards and "promote economies for the legal decisionmaker by minimizing the elaborate, time-consuming, and repetitive application of background principles to facts." Sullivan, The Supreme Court, 1991 Term--Foreword: The Justices of Rules and Standards, 106 HARV.L.REV. 22, 63 (1992). Rules are the normal method used in a jurisprudence of judicial restraint; broad standards and balancing tests are the usual mechanism of a jurisprudence that allows individual judges to choose for themselves the preferred result in each case and to give expression to their feelings, intuition, and sense of justice. Broad standards are often useful and necessary in new areas of the law, particularly those new areas that legislative bodies direct courts to enter for the first time in order to regulate a perceived social problem, as well as in areas of law that traditionally sounded in equity.
 
 
 22
 "Virtual representation's" intense case-by-case analysis is particularly undesirable in circumstances where its application would replace settled, rule-like procedures. In cases such as the instant case, these procedures already exist in the form of Rule 23. The application of the doctrine of virtual representation in these circumstances would create an end run around the limitations of Rule 23, and would as a result both avoid its limitations (which are explicitly grounded in due process) and replace a clear rule with an unruly standard. Such a result would defeat the purposes of both res judicata and Rule 23.
 
 
 23
 This Court's only other examination of virtual representation deserves comment. In Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 43 F.3d 1054 (6th Cir.1995), Judge Kennedy reviewed scholarly treatment of virtual representation and rejected the lower court's overly broad application of the doctrine. The Court remanded the case for factual findings under "the narrower theory of virtual representation articulated above." Id. at 1071. It is not clear from the Court's discussion whether this narrower theory was to be broader than the Restatement sections cited with approval in Richards. In any case, however, the Supreme Court's subsequent decision in Richards, which requires a more limited analysis subject to the rules articulated in the Restatement and Rule 23, has since intervened, and Richards binds us to a rule of res judicata limited to parties and their "privities." It may not be extended, as would be the case under a broad "virtual representation" doctrine, to a class never certified.
 
 
 24
 Under the proper test--that of the Restatement and Rule 23--the plaintiffs in the instant case are not precluded from pursuing their claims. Section 41 clearly requires "approval of the court" for a representative of a class to "represent," for privity purposes, later plaintiffs. RESTATEMENT (SECOND) OF JUDGMENTS § 41 (1980). Contrary to the defendants' arguments in a supplemental briefing to this Court, § 40 of the Restatement does not imply a contrary result. Section 40 provides: "A person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of the agreement." Id. § 40. Here, no such agreement exists. While it is true that one of the Restatement's comments suggests that an agreement may be implied, see id. cmt. b, "no such agreement should be inferred except upon the plainest circumstances." Id. (emphasis added). The illustration found in comment b is completely inapposite to this case. Moreover, the facts in this case do not support such an inference. Indeed, during the Spaulding litigation Bittinger asked his current counsel about pursuing his own cause of action. This fact suggests that Bittinger did not believe Spaulding, Carroll, and Bishop were representing his interests. Tecumseh and the district court conclude from the fact that Bittinger then waited to bring his own suit that he expected to benefit from the Spaulding suit if it was successful, but their reasoning is flawed. Had the class been certified, Bittinger would admittedly have benefitted, and had the class lost would today be bound by that decision. But the class was not certified, and because the court granted Tecumseh's summary judgment motion before ruling on class certification, Bittinger and other putative class members had no opportunity to litigate their claims in that action. Thus, we cannot conclude that Bittinger's failure to bring his own suit implies that he agreed to be bound by the Spaulding litigation.
 
 III.
 
 25
 The second issue in this case is whether the plaintiffs are entitled to a jury trial for their claims. The plaintiffs provide two statutory bases for their claims: the Labor-Management Relations Act § 301, which allows suits by labor organizations to enforce the provisions of the Act; and ERISA § 502(a)(1)(B), which allows a person to bring a civil action to recover benefits due under a plan or to enforce or clarify rights.
 
 
 26
 Whether the plaintiffs are entitled to a jury trial to enforce these provisions depends on whether their claims are best characterized as legal or equitable under the familiar two-part test of Tull v. United States, 481 U.S. 412, 419, 107 S.Ct. 1831, 1836, 95 L.Ed.2d 365 (1987). This test requires (1) a historical determination, which considers whether the modern statutory cause of action most nearly resembles historical actions in law or equity, and (2) an examination of the nature of the relief sought. Chauffeurs, Teamsters and Helpers Local 391 v. Terry, 494 U.S. 558, 565, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990) (plurality opinion); Tull, 481 U.S. at 419, 107 S.Ct. at 1836.
 
 
 27
 The plaintiffs erroneously contend that their claims most nearly resemble claims for breach of contract, are legal in nature, and hence support a jury right. With respect to the plaintiffs' claim under the LMRA § 301, it is true that the Supreme Court has concluded that a jury trial right exists in some situations under § 301. In Chauffeurs, Teamsters and Helpers Local 391 v. Terry, a union sought back pay in an action for breach of the duty of fair representation. Though the search for an adequate 18th-century analog revealed both legal and equitable aspects, the Court found the type of relief sought legal in nature, and concluded that a jury right exits. 494 U.S. at 573, 110 S.Ct. at 1348. However, the nature of the relief requested in this case much more nearly resembles the relief requested in Golden v. Kelsey-Hayes Co., 73 F.3d 648, 662 (6th Cir.1996), cert. denied, 519 U.S. 807, 117 S.Ct. 49, 136 L.Ed.2d 13 (1996), which involved an action to reinstate health care benefits and obtain damages sustained as a result of the defendants' refusal to pay health care benefits. The Golden court held that this type of action was equitable in nature, and hence that no right to a jury trial existed. Id. at 661. The complaint in Golden, like the complaint in the instant case, sought some relief couched in the language of damages. For example, the Golden plaintiffs sought "damages equal to all costs and expenses sustained by class members ... as a result of their refusal to provide the health care benefits negotiated by Kelsey-Hayes and the UAW...." Id. at 661. Similarly, the instant plaintiffs seek "damages in the form of loss of benefits, the cost of premiums incurred under the unilaterally amended Insurance Plan, expenses incurred in purchasing private coverage, and/or the costs incurred of uninsured medical bills." Complaint at 7 (J.A. at 30). The Golden court explained that "[a] court does not err in denying a jury trial where the monetary award sought is incidental to, or intertwined with, equitable relief. It does err when it denies a jury trial because of its determination that legal issues in the case are merely incidental to equitable ones." Golden, 73 F.3d at 661. The court, based on a complaint similar to that in the instant case, held that the relief sought was within the former situation. Id. Similarly, we hold that the plaintiffs' request for monetary relief here is incidental and intertwined with their fundamental request for a declaration that they are entitled to fully-funded retiree benefits. The latter claim is clearly equitable in nature. It most closely resembles an action in chancery by beneficiaries to interpret and enforce a trust agreement or for the impressment of a constructive trust, an action historically brought before the chancellor, not before the court of common pleas. Thus the plaintiffs are not entitled to a jury trial on their LMRA § 301 claim.
 
 
 28
 The plaintiffs also seek relief under ERISA § 502(a)(1)(B). The Supreme Court and this circuit have held that suits under § 502(a)(3), which allows actions for injunctions or other equitable relief, are not entitled to jury trials. See Mertens v. Hewitt Assocs., 508 U.S. 248, 260, 113 S.Ct. 2063, 2070, 124 L.Ed.2d 161 (1993); Bair v. General Motors Corp., 895 F.2d 1094, 1096-97 (6th Cir.1990). The plaintiffs, however, argue that § 502(a)(1)(B), which allows actions for benefits due and for clarification of rights, should be treated differently. While they may be correct in noting that some claims under ERISA--perhaps even claims under § 502(a)(1)(B)--may carry with them a jury trial right, we need not decide this issue, because our analysis with respect to the plaintiffs' LMRA claim is equally true here: Their claim is fundamentally a claim for benefits analogous to an action to enforce a trust and hence clearly equitable in nature. Their related requests for damages do not constitute separate claims that warrant their own jury right analysis: Rather, they are intertwined with the claim for benefits. The plaintiffs are thus also not entitled to a jury trial on their ERISA claim.IV.
 
 
 29
 The defendants argue, in their cross-appeal, that the district court should not have certified the class under Rule 23 of the Federal Rules of Civil Procedure. Specifically, they contend that there are no questions of law or fact common to the class and that the claims and defenses of the representative parties are atypical of the claims and defenses of the class.[1] Within the confines of Rule 23, the district court has broad discretion in deciding whether to certify the class. In re American Medical Systems, Inc., 75 F.3d 1069, 1078-79 (6th Cir.1996). We review the district court's judgment for abuse of discretion.
 
 
 30
 Under Rule 23(a), a class action may not be maintained unless certain preconditions are met. The second of these requires the presence of questions of law or fact that are common to the class. FED.R.CIV.P. 23(a). Rule 23(a) simply requires a common question of law or fact. See Forbush v. J.C. Penney Co., 994 F.2d 1101, 1106 (5th Cir.1993). In the instant case, each class member claims that the original collective bargaining agreement guaranteed them lifetime, fully-funded benefits. This common question is all that is required under the Rule.
 
 
 31
 The third prerequisite to a class action under Rule 23(a) is the requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED.R.CIV.P. 23(a). The defendants first contend that the required typicality of claims is not met. They point out that some but not all of the class members retired before the Sixth Circuit held that retiree benefits were mandatory subjects of bargaining. They also note that approximately two-thirds of the class signed releases and enrolled in Tecumseh's alternate, partially-funded plan. Finally, Tecumseh argues that the representations of company management on which the plaintiffs rely (most but not all of which were oral) were not uniformly communicated to all class members. All this may be true, but it does not disqualify the class under Rule 23(a). The plaintiffs' evidence appears to follow a pattern, and the people they claim made the representations are largely the same people. More importantly, Bittinger--like each class member--contends that Tecumseh originally planned to provide lifetime, fully-funded benefits to retirees, as a general matter. That the evidence varies from plaintiff to plaintiff would not affect this basic claim (though the district court correctly notes that individual estoppel claims might be affected). See In re American Medical Systems, 75 F.3d at 1083 (holding that named plaintiffs' claim is typical if it arises from the same course of conduct).
 
 
 32
 The defendants also contend that the class should not have been certified under Rule 23(a)(3) because the plaintiffs' claims would be subject to varied defenses. In particular, some class members, including Bittinger, signed papers releasing the company from liability when they accepted the partially-funded alternative plans. Not all of the class members signed these releases. Again, however, this difference is not enough to justify rejection of class certification. See Finnan v. L.F. Rothschild & Co., 726 F.Supp. 460 (S.D.N.Y.1989) (certifying class despite the fact that some but not all class members had signed arbitration agreements); see also Forbush, 994 F.2d at 1106 (noting that test for typicality, like commonality, is not demanding and does not require identicality). It may be that the best remedy to both the purportedly atypical claims and defenses would be to create sub-classes. Rule 23 does not require such an action at this stage, however, and we express no opinion on this issue as the district court expressly left this possibility open. Opinion at 3-4 (J.A. at 64-65).
 
 
 33
 Finally, the defendants argue that the varying level of injury among class members should preclude class certification. In particular, they contend that because Bittinger accepted benefits under the partially-funded alternate plan, and because he "did not protest increased benefit costs" after 1984, he did not suffer the same injury suffered by all members of the class. This argument is also without merit. Though the level of claimed injury may vary throughout the class--a common feature of class actions routinely dealt with at a remedial phase--the basic injury asserted is the same: Tecumseh violated the terms of the collective bargaining agreements by unilaterally terminating fully-funded lifetime benefits. As noted above, those differences that exist--including the individual estoppel claims--can be dealt with through methods other than denial of class certification, at a later stage in the proceeding.
 
 V.
 
 34
 The defendants raise on appeal numerous additional grounds for relief, most of which are related to the merits of the plaintiffs' claims. As the district court has not ruled on these alternative grounds, the district court will be given an opportunity to rule on them on remand.
 
 CONCLUSION
 
 35
 For the foregoing reasons, the judgement of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.
 
 
 36
 RYAN, Circuit Judge, dissenting.
 
 
 37
 The district court below granted summary judgment to defendants on the basis that plaintiffs, a class of retirees who were employed by Tecumseh Products Co., were "virtually represented" by a previous group of Tecumseh retirees against whom judgment as a matter of law was rendered in an identical action. Because the virtual representation strain of res judicata has unquestionably been adopted as the law in this circuit, we are bound to affirm the district court under the undisputed facts of this case. Therefore, I dissent.
 
 I.
 
 38
 The following is a list of the salient facts of this case, culled from the record:
 
 
 39
 1. The plaintiff class is comprised of retirees from Tecumseh. They allege that they were promised lifetime health insurance upon retirement and that defendants have unlawfully terminated this insurance coverage.
 
 
 40
 2. After their insurance benefits were reduced, the Tecumseh retirees formed a nonprofit organization for the explicit, sole purpose of "seek[ing] legal advice for reinstatement of promised benefits." The organization was named Unified Tecumseh Products Hourly Retires (Tecumseh Division), or UTPHR.
 
 
 41
 3. UTPHR invited an attorney to address the group regarding the feasibility of suing Tecumseh. The first attorney who was consulted declined to represent the group.
 
 
 42
 4. UTPHR subsequently hired another attorney to file a claim against Tecumseh.
 
 
 43
 5. UTPHR authorized the filing of a claim against Tecumseh in the name of several of its members, including Spaulding, Carroll and Bishop.
 
 
 44
 6. UTPHR financed this initial suit. The president of UTPHR has testified that "[t]o the best of [his] ability," UTPHR was to "foot the bill" for the first suit. Plaintiff argues that the secretary of the group "could recall no discussion regarding the financial liability for the lawsuit." However, the deposition relied on for this contention indicates that the secretary did understand that UTPHR may be obligated to pay costs and attorney fees.
 
 
 45
 7. The claims advanced in this initial suit were virtually identical to those at issue in the present case.
 
 
 46
 8. This first suit was dismissed with prejudice.
 
 
 47
 9. Members of UTPHR and UTPHR itself both have an attorney-client relationship with plaintiff's counsel in the present case.
 
 
 48
 10. UTPHR authorized the filing of the present suit and the naming of Bittinger as the lead plaintiff.
 
 
 49
 11. Bittinger expected UTPHR to finance the present litigation. Contrary to plaintiff's contention, Bittinger's deposition supports this fact. ("Q: Who is liable [for costs and fees]? A: The union members or retirees.")
 
 
 50
 12. Bittinger is a member of UTPHR.
 
 
 51
 13. Bittinger has contributed to UTPHR with the understanding that the money was for litigation expenses, has attended at least two UTPHR meetings, and has attended at least one meeting at which an attorney was present to discuss the merits of a suit against Tecumseh.
 
 
 52
 14. Bittinger signed an affidavit in support of the first case, and has received communications from UTPHR regarding its litigation efforts.
 
 
 53
 15. Bittinger's current counsel advised him that the first suit was in progress, and that his interests were being represented there.
 
 
 54
 16. Bittinger declined at that time to file independently.
 
 
 55
 17. Although UTPHR's bylaws are not included in the Joint Appendix, it is an almost inescapable conclusion that the current class, which consists of all UTPHR members except those who lost the first action, constitutes a clear majority of UTPHR members, and would therefore be able to control UTPHR's actions.
 
 
 56
 Although the plaintiff class has disputed some of these particulars in its briefs, the record evidence to which it has pointed undermines rather than supports its position. Most notably, the deposition testimony cited by plaintiff tends to bolster these factual conclusions. Thus, the unsupported statements in plaintiff's briefs are insufficient to raise an issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986) (citing Fed.R.Civ.P. 56).
 
 
 57
 In light of these facts, the district court held that Bittinger was "in privity" with UTPHR based on his participation and acquiescence in the first action; that his interests were "adequately represented" in the first suit; and that he was therefore precluded from raising claims that had already been adjudicated.
 
 II.
 A.
 
 58
 Our recent decision in Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 43 F.3d 1054 (6th Cir.1995), and the authorities cited therein, provide adequate guidance for the resolution of this case. Becherer involved separate lawsuits by two groups of investors in a luxury hotel against the developers of the hotel. The district court had barred the second group's lawsuit on res judicata grounds, finding that the relationship between the two groups was "sufficiently close" to find privity. Both had the same interest in the case, "both were identically situated and both raise[d] the same causes of action." Id. at 1070. Thus, the first group had virtually represented the second.
 
 
 59
 A panel of this court reversed, holding that merely having a close relationship and identical interests was insufficient to find res judicata. Id. at 1070-71. However, we noted a "strong possibility" that, on remand, the facts would demonstrate the need for applying the virtual representation doctrine and barring the claim. We stated that, if plaintiffs had, through a mutual association, "authorized, financed, and controlled the investigation and prosecution of the [first] plaintiff's suit, including hiring an attorney and arranging to pay him a combination retainer and contingency fee," virtual representation would apply. Id. at 1071. In light of the facts in the case at bar, this observation in Becherer should end our inquiry.
 
 
 60
 Here, UTPHR authorized, financed, and controlled the investigation and prosecution of both sets of plaintiffs' suits. In fact, the group was explicitly formed for this purpose. And, in both cases, UTPHR made the decision who the named plaintiffs would be, hired the attorney, and assumed financial liability for the litigation. Thus, UTPHR is precluded from relitigating claims it has already lost; it should not be able to escape the effects of res judicata merely by naming a different plaintiff.
 
 
 61
 The majority opinion holds that, merely because the former class was never certified, the Bittinger plaintiffs cannot be claim precluded. However, this fact by itself provides insufficient grounds for reversing the district court. Under this interpretation, a group of allegedly injured persons with identical interests could form an organization through which to pursue their common claims against a common defendant, name a handful of members as representatives of the putative class, and then, if, for whatever reason, the action was dismissed before the class was certified, the organization could name several more members and bring the identical claim against the same defendant, with the sole exception that the first named plaintiffs would be precluded from being part of the class. Theoretically, under the majority's reasoning, an organization such as UTPHR could follow this strategy until it was out of members. Not recognizing virtual representation under these facts is tantamount to holding that the doctrine does not exist at all. A leading commentator has noted as much: "It seems clear enough that an association should not be able to evade preclusion continually by averring that unidentified members are not bound and bringing successive suits by claiming injury to different identified members." 18 Charles A. Wright, Arther R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4456.
 
 B.
 
 62
 Besides the fact that UTPHR "authorized, financed, and controlled" both suits, the particular virtual representation factors upon which we relied in Becherer also require the preclusion of the claims at issue here. In Becherer, we distinguished three situations in which a nonparty to the first action will be considered "in privity" with an actual party: 1) when the nonparty has succeeded to a party's interest; 2) when the nonparty controlled the first action; and 3) when the nonparty's interests were "adequately represented" by a party in the first suit. Becherer, 43 F.3d at 1070. This case fits easily within either the second or third strains of privity, even when viewed from the vantage of Bittinger and the rest of his class, as opposed to UTPHR.
 
 1.
 
 63
 "Control" means actual control in determining the legal theories and strategies to be employed. Benson and Ford, Inc. v. Wanda Petroleum Co., 833 F.2d 1172, 1174 (5th Cir.1987). In Benson and Ford, a person who testified for the plaintiff in the first suit, had the same attorney as the plaintiff, and later asserted the same facts and same legal theories in his own suit was not precluded from pursuing his claim. Id. at 1173. The Benson and Ford court held that "control" required a relationship akin to that between a president/sole shareholder and his or her company, a parent corporation and its subsidiary, an indemnitor and its indemnitee, or a liability insurer and an insured. Id. at 1174.
 
 
 64
 Here, we have just that sort of relationship. Bittinger and the other members of his class formed UTPHR to regain, through legal channels, their insurance benefits. Collectively, they owned and controlled the organization. The fact that UTPHR did not sue in its own name is immaterial and is a matter of form and not substance. UTPHR was the real party in interest in both cases. The current class of plaintiffs almost certainly formulated and adopted UTPHR's litigation-related purpose and elected its board of directors. In this manner, the plaintiff class controlled UTPHR, and thus, the Spaulding litigation.
 
 2.
 
 65
 A nonparty may have been "adequately represented" in one of two instances in a case such as this: either the nonparty has the power to hold the party legally accountable, or the nonparty acquiesces in being represented by the party. Becherer, 43 F.3d at 1070. As we indicated in Becherer, virtual representation " 'demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues.' " Id. (quoting Benson and Ford, 833 F.2d at 1175). It does not require, despite the connotation of its title, that the first party have been competent in its prosecution of the first suit. Benson and Ford, 833 F.2d at 1175.
 
 
 66
 This court has previously bound the chairperson of a board of directors and the president of a company to a decision against the company, because the chairperson and the president controlled the company and therefore were in privity with it. Sanders Confectionery Prods., Inc. v. Heller Fin., Inc., 973 F.2d 474, 481 (6th Cir.1992). In Sanders, a shareholder in the company may not have been a privy. The district court held that the board owed a fiduciary duty to the shareholder, and thus "absent bad faith, collusion, or negligence by the board, the stockholder is deemed adequately represented." Id. We reversed, finding that the company could not have brought one of the stockholder's claims, and therefore could not have adequately represented him. Id. at 482.
 
 
 67
 Here, however, UTPHR is legally accountable to its members, and the claims it brought in Spaulding are essentially identical to the claims at bar. The Michigan Nonprofit Corporation Act provides in part:
 
 
 68
 A director or an officer shall discharge the duties of that position in good faith and with that degree of diligence, care, and skill which an ordinarily prudent person would exercise under similar circumstances in a like position.
 
 
 69
 Mich. Comp. Laws § 450.2541(1). Furthermore, subsection (5) of section 450.2541 indicates that members have a cause of action against directors for failing to perform the duties imposed by that section. Thus, there need be no implied legal relationship of accountability; here, it is express. And, as the district court found, all the claims involved in Bittinger were or could have been brought in Spaulding. Bittinger v. Tecumseh Prods. Co., 915 F.Supp. 885, 890 (E.D.Mich.1996).
 
 
 70
 Although the claims of this class of retirees could easily be dismissed based on control or accountability, the majority argues that the Federal Rules of Civil Procedure and the Restatement of Judgments preclude doing so. Neither Fed.R.Civ.P. 23 nor § 41 of the Restatement is irrelevant, but neither controls the result in this case. In the first place, the majority erroneously concludes that § 41 establishes a minimum threshold for finding privity. However, as the majority's own opinion concedes, the Supreme Court has indicated that § 41 is but one example of privity, and that, in addition, adequate representation will also suffice. See Richards v. Jefferson County, Ala., 517 U.S. 793, ----, 116 S.Ct. 1761, 1766, 135 L.Ed.2d 76 (1996).
 
 
 71
 Additionally, the majority's unhappiness with the doctrine of virtual representation and preference for the "crisp rules with sharp corners" of Rule 23 is water over the dam. As made obvious in Becherer, virtual representation is with us, and the only question is whether the district court erred in finding that Bittinger and the rest of the class were adequately represented in the first case. Richards in no way calls into question our analysis in Becherer, either directly or by implication.
 
 
 72
 Although the Richards Court reversed a finding of res judicata, its judgment rested on the facts that 1) the nonparties had no notice of the first suit in which an identical issue was litigated, and 2) the party to the first suit and the nonparty allegedly bound in the subsequent suit were "mere 'strangers' " to each other. Richards, 517 U.S. at ----, 116 S.Ct. at 1768. Obviously, Bittinger and the rest of the members of UTPHR had notice of the first suit; they initiated it. Further, Bittinger's counsel informed him while Spaulding was pending that his interests were being represented there, and that filing separately would be duplicative. Also, the members of a common organization formed for bringing the instant litigation can hardly be said to be "mere strangers."
 
 3.
 
 73
 The final strain of virtual representation is that of acquiescence. "A person having a claim or defense paralleling or related to other litigation may agree that the outcome of the other litigation will be determinative of the issues in his case.... An agreement to be bound by the result of another action ... may be implied from conduct and manifestations of intention." Restatement (Second) of Judgments § 40 cmt. a. In Cauefield v. Fidelity and Casualty Co. of New York, 378 F.2d 876 (5th Cir.1967), nonparties had acquiesced to a judgment in light of the fact that their federal case had been continued in order for a state case, the result of which ultimately bound them, to be resolved. As the Fifth Circuit later pointed out in discussing Cauefield, the preclusive effect of the state court proceeding on the federal litigants arose out of a "tacit agreement" to "resolve all the numerous identical claims" in state court. Benson and Ford, 833 F.2d at 1176.
 
 
 74
 Bittinger acting individually would be unable to control UTPHR and arguably unable to hold it legally accountable. But Bittinger acquiesced in UTPHR's representation in Spaulding, and cannot now be heard to complain about the result. He helped form the group for purposes of litigation. He was there on at least one occasion when an attorney spoke to the group about suing Tecumseh. He contributed money to support the group's efforts, and signed an affidavit in furtherance of the litigation strategy. He received communications from UTPHR updating him on the progress of the litigation. He even consulted independent counsel who then specifically told him of his legal rights and that they were being represented by the Spaulding plaintiffs. Contrary to the assertion by the majority, this last fact demonstrates anything but that Bittinger did not believe Spaulding, Carroll, and Bishop were representing his interests. If Bittinger or his counsel had truly believed that, they could have filed an independent claim.
 
 
 75
 Further, it is unlikely that finding virtual representation in this case actually thwarts Rule 23's preference for potential plaintiffs to wait and see, and not file multiple, independent claims. In the normal case, in which potential plaintiffs merely have identical interests, and have not banded together to litigate their claims, these potential plaintiffs would not have to each file separately. Without taking the affirmative step of joining a litigation organization and without the class being certified, these plaintiffs would not have acquiesced in the representation of, nor controlled, nor could hold legally accountable, the named plaintiffs. A putative plaintiff could have merely refused to participate in the group in order to protect his or her right to present a future claim. Or, having participated, the individual could have withdrawn from the voluntary association once he or she became dissatisfied with its representation. Or, having participated and not withdrawn, the individual could have filed independently. Thus, adequate protection, consistent with Rule 23, exists for potential plaintiffs who have, and also those who have not, formed a litigation group.
 
 
 76
 Essentially, the Bittinger plaintiffs' argument is no different than one which the indisputably precluded Spaulding plaintiffs could make. The Spaulding plaintiffs, too, could argue they had an insufficient chance to "opt out" before summary judgment was rendered, and that a rule precluding them from relitigating would in the future influence them to file three separate claims and to attempt to enforce issue preclusion against Tecumseh if any of them won. The majority attempts to make an untenable distinction between the Spaulding plaintiffs who were actual parties to the first litigation and the Bittinger class which was not. The fact that Bittinger was not an actual party to Spaulding cannot end the virtual representation inquiry; rather, it begins there.
 
 III.
 
 77
 The district court's findings that Bittinger's interests were identical to the first plaintiffs', that he participated in the initial suit, that he acquiesced in that suit, and that an "express or implied legal relationship" existed between Bittinger and UTPHR, are sufficiently supported by the essentially undisputed facts in the record. These facts indicate that the spirit and the letter of the claim preclusion doctrine are met by barring Bittinger's claim.
 
 
 78
 All the members of the plaintiff class retired from the same company; they joined together in an association with the express purpose of reclaiming their retirement benefits; they chose to file suit, decided who should represent the class, and took up collections to pay for the legal fees; many or most completed affidavits in support of the litigation; and they were periodically appraised of the status of the suit. Bittinger not only knew of and participated, at least minimally, in the first suit, he declined to file his own action because his own counsel informed him that his interests were already being represented. At the very least, he acquiesced at that point to the representation, however unwise, of UTPHR counsel in the first case.
 
 
 79
 Therefore, the judgment of the district court should be affirmed.
 
 
 
 *
 Judge Ryan would grant rehearing for the reasons stated in his dissent
 
 
 **
 The Honorable Floyd R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 Tecumseh also contends that the plaintiffs failed to address the issue of whether joinder of all members of the class is impracticable, a requirement under Rule 23(a). This contention is frivolous. Rule 23(a) requires the court to find that "the class is so numerous that joinder of all members is impracticable." F.R. CIV. P. 23. The class is composed of over 1100 retirees. The district court explicitly found, and we agree, that joinder of so many parties would be impracticable. To reach this conclusion is to state the obvious and does not constitute the adoption of a "strict numerical test." See Senter v. General Motors Corp., 532 F.2d 511, 523 n. 24 (6th Cir.1976)