NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0052n.06

No. 09-1544

FILED
**Jan 27, 2010**
LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

T0LTEST, INC.,

     Plaintiff-Appellant,

v.

NORTH AMERICAN SPECIALTY
INSURANCE COMPANY,

     Defendant-Appellee.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

               /            OPINION

BEFORE:    NORRIS, CLAY, and SUTTON Circuit Judges.

    **CLAY, Circuit Judge.**  Plaintiff TolTest, Inc. ("TolTest") appeals from the grant of summary judgment to Defendant North American Specialty Insurance Company ("NASIC") on the grounds of *res judicata*. TolTest sued NASIC as the surety for Acme Contracting, Ltd. ("Acme"), a subcontractor who successfully bid for a contract but then failed to perform. TolTest argues that NASIC owes a 5% bid bond for Acme's failure to perform. The district judge determined that TolTest's failure to litigate this issue in previous litigation between Acme and TolTest barred them from pursuing it here. TolTest also appeals the denial of their motion to add Acme as a defendant. For the following reasons, the judgment of the district court is **AFFIRMED**.

**FACTUAL HISTORY**

The resolution of this case is inextricably related to separate litigation between TolTest and Acme currently pending before this Court as Case No. 08-2072 (the "Acme-TolTest litigation"). The Acme-TolTest litigation deals with a contract dispute stemming from an agreement to demolish two buildings at Georgia Tech University. The full factual history of that case, as found by a district judge following a bench trial, can be found at *Acme Contracting, Ltd. v. TolTest, Inc.*, No. 07-10950, 2008 WL 1990780 (E.D. Mich. May 5, 2008). A brief recitation of the facts most relevant to this appeal is provided here.

TolTest and Acme were contractor and subcontractor on a construction demolition project at Georgia Tech University. The contract that the parties entered into is called the 01-contract. While the parties were operating under the 01-contract, the project manager, Whiting-Turner, offered the 04-contract for bid. Acme submitted a bid as subcontractor to TolTest, who successfully used the bid to secure the contract. Following TolTest's receipt of the contract, Acme refused to enter into an agreement with TolTest on the 04-contract. Acme had secured a 5% bid bond in connection with the 04-contract, and TolTest, in this suit, hopes to receive those funds from Acme's surety, NASIC.

The Acme-TolTest litigation does not focus on the 04-Contract. The heart of the suit was Acme's allegations that TolTest breached the 01-contract. Additionally, however, Acme pursued a claim for quantum meruit based on its contention that it performed work that would have been part of the 04-contract and was not compensated for it. TolTest currently does not contest that Acme performed this work or that it is entitled to some compensation for it. In the course of reaching its

decision in the Acme-TolTest litigation, the district court made the following findings about the 04-

Contract:

> Meanwhile, on or about April 6, 2006, Whiting-Turner invited TolTest to bid on a separate groundwork, grading, and shoring phase of the Georgia Tech Project (Subcontract Number 11000-04). (Stipulated Facts at ¶ 24). TolTest and Acme again collaborated on bidding this second phase. (Stipulated Facts at ¶ 25). On or about May 22, 2006, Acme submitted a bid to TolTest for $1,517,349 to perform the work under this second phase. (Stipulated Facts at ¶ 26). Whiting-Turner awarded TolTest Subcontract Number 11000-04 for "Grading and Site Utilities". (Stipulated Facts at ¶ 27).

> TolTest sent a purchase order to Acme for work to be performed under Subcontract Number 11000-04. (Stipulated Facts at ¶ 28). Acme did not sign that purchase order, however, because the ultimate contract that TolTest signed with Whiting-Turner, the "04-Contract," had expanded the work that Acme would perform but did not provide for any increased compensation to Acme for that work.

> It is undisputed that TolTest and Acme were never able to arrive at an Agreement for work under Subcontract Number 11000-04 for "Grading and Site Utilities" and Acme never signed the purchase order. (Stipulated Facts at ¶ 31).

## DISCUSSION

The district court granted summary judgment on behalf of NASIC based both on principles

of *res judicata* and based on a determination that TolTest's claim was a compulsory counter-claim

in the Acme-TolTest litigation. The district court should be affirmed if either ground is

independently satisfied. Traditional *res judicata* principles are broader and incorporate more

activity, so we rest our holding on that basis.[1]

---

[1] If the suit were against Acme itself, we would rest our holding on the grounds that the bid bond claim was a compulsory counter-claim. In general, in "many of the cases involving a former defendant become plaintiff, the compulsory counterclaim provisions of Civil Rule 13(a) supersede

This Court reviews *de novo* a district court's application of the doctrine of *res judicata.* *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009). The party asserting the defense of *res judicata* bears the burden of proof. *Winget v. JP Morgan Chase Bank*, 537 F.3d 565, 572 (6th Cir. 2008). For *res judicata* to apply, the following elements must be present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies."; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Bragg*, 570 F.3d at 776 (quoting *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 880 (6th Cir. 1997)). Before the district court, and also on appeal, TolTest only contests the third element.

In order to make a finding of *res judicata* in this case, the Court must determine that TolTest should have brought a counter-claim in the Acme-TolTest litigation. The issue of the bid bond was assuredly not litigated in the previous action, but NASIC's contention is that it "should have been litigated." TolTest argues in reply that "the law is clear – res judicata applies only to claims that TolTest was <u>required</u> to bring at that time, not those that it could have." (Pl. Reply Br. at 7). TolTest's assertion is simply not correct. The Sixth Circuit has rejected an argument that only compulsory counter-claims apply to *res judicata*, finding that "what is important is not whether a particular claim is compulsory, but whether the claim should have been considered during the prior

---

other principles of preclusion." 18 C. Wright, A. Miller & E. Cooper, Federal Practice And Procedure § 4414 (2d ed. 2002). Rule 13(a), however, requires claims be brought "against an opposing party." NASIC was not a party to the Acme-TolTest litigation. As Acme's surety, the principle may apply to NASIC with equal force, but to our knowledge, no court has ruled either way on this issue. We decline to do so here and instead rely on the broader prohibitions of *res judicata*.

action." *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 484 (6th Cir. 1992). The purpose of *res judicata* is to compel "litigants to bring all related claims in one suit." *Wilkins v. Jakeway*, 183 F.3d 528, 532 n.4 (6th Cir. 1999).

The contested issue in this suit by TolTest is the negotiations over the 04-contract. The district court crucially remarked that "to litigate the bid bond claim in this action, TolTest would present the testimony of the very same witnesses who testified in [the Acme-TolTest litigation] and would present the very same documents that were presented in that action." *TolTest, Inc. v. North American Specialty Ins. Co.*, No. 07-15193, 2009 WL 877715, at *8 (E.D. Mich. Mar. 30, 2009). Tellingly, the documents attached by TolTest to its complaint in this case all were offered as exhibits at the Acme-TolTest trial.

The overlap of evidence and witnesses is important because it undermines TolTest's primary argument on appeal. TolTest repeatedly emphasizes that the actual legal question of whether it could collect on the bid bond was not squarely before the district court in Acme-TolTest. This conclusion is true, as whether TolTest or Acme were responsible for the contract falling through, every substantive holding of the district court in the Acme-TolTest litigation would have remained unchanged. Neither *res judicata* nor the compulsory counterclaim rules are so narrow as to exclude all cases where the exact legal question need not be resolved. TolTest undermines its own claim in briefing by arguing that it, and not Acme, pointed out the 04-contract, "but not to make a claim for damages from that transaction, but to provide the Court background information." (Pl. Reply Br. at 8). TolTest thinks this argument is helpful because it was made "to distinguish the issues associated with [the 04-contract] from those being tried to the court." *Id*. In reality, however, it

underscores the fact that the 04-contract arose out of the same occurrence that was at issue in the Acme-TolTest litigation.

Acme requested quantum meruit damages for its work that would have been covered by the 04-contract. The facts surrounding the 04-contract, perhaps inevitably, became relevant to the district court's decision on the merits of the quantum meruit claim. The district judge did not need to determine specifically why Acme did not agree to the 04-contract, the issue in this suit, but it did need to understand what work was provided for in the contract and why Acme was performing work pursuant to the contract without ever having signed it. The relevance of the 04-contract is apparent from the complaint in the Acme-TolTest litigation. Paragraphs 40-45 specifically refer to the 04-contract negotiations, including that: "When Acme and TolTest were unable to reach an agreement on a concise scope of work, the issue of liquidated damages and pricing for the Earthwork, negotiations between the two parties eventually came to an end in early July, 2006." (Acme-TolTest Compl. ¶ 42). In order to understand what led to Acme's quantum meruit claim based on work that would have been part of the 04-contract, the parties necessarily needed to discuss their negotiations of the 04-contract.

The factual and evidentiary nexus between the two claims leads to the inevitable conclusion that the bid bond issue "arose from the same transaction or series of transactions" that were litigated in the Acme-TolTest litigation. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529 (6th Cir. 2006) (quotation and citation omitted). While the exact dispute at issue here need not have been resolved in the previous litigation, the facts surrounding the 04-contract were in front of the district

court in the Acme-TolTest litigation, including the witnesses and exhibits necessary to litigate the bid bond claim.

Finally, *res judicata* is appropriate in this case for the purposes of judicial economy. A minor addendum to the Acme-TolTest litigation would have been substantially more efficient than a completely separate suit.[2] *See Hutcherson v. Lauderdale County, Tennessee*, 326 F.3d 747, 757 (6th Cir. 2003) (acknowledging that a district court can raise *res judicata sua sponte* for judicial economy reasons). Therefore, TolTest should have litigated the bid bond issue during the Acme-TolTest litigation and is barred by *res judicata* from bringing this separate action.

For the same reasons, TolTest's motion to amend its complaint to include Acme was properly denied. "[A] motion to amend a complaint should . . . be denied if the amendment . . . would be futile." *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 633 (6th Cir. 2009) (quotations and citations omitted). The same principles of *res judicata* would apply even more strongly to Acme than its surety, and it seems without doubt that TolTest had a compulsory counterclaim against Acme. *See Sanders v. First Nat. Bank & Trust Co.*, 936 F.2d 273, 277 (6th Cir. 1991) (applying the "logical relation" test which requires a court to determine "whether the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or

---

[2] Implicitly, TolTest knows this; since in filing this action, it marked the Acme-TolTest litigation as a "companion case." According to local rule 83.11 of the Eastern District of Michigan, companion cases are those cases in which it appears that "(i) substantially similar evidence will be offered at trial, or (ii) the same or related parties are present, and the cases arise out of the same transaction or occurrence."

refute both claims").  Therefore, TolTest would likewise be barred from pursuing the bid bond in a subsequent action against Acme.

## CONCLUSION

For the foregoing reasons, the district court's judgment is **AFFIRMED.**