Eugene F. THOMAS, et al., Plaintiffs,

v.

MOORE USA, INC., et al., Defendants.

No. C-3-98-535.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 23, 1999.

Richard S. Wayne, Cincinnati, OH, William R. Jacobs, Cincinnati, OH, Daniel E. Gustafson, Minneapolis, MN, Robert G. Eisler, for Plaintiffs.

David C. Greer, Dayton, OH, William S. Waldo, Los Angeles, CA, Lawrence B. Oppenheimer, Mark L. Silbersack, Cincinnati, OH, Wendy L. Andersen, Cincinnati, OH, Carl J. Stich, Jr., for Defendants.

**DECISION AND ENTRY OVERRULING MOTION TO STRIKE CLASS ACTION ALLEGATIONS (DOC. # 55), FILED BY DEFENDANT MOORE U.S.A., INC., WITHOUT PREJUDICE TO RENEWAL; MOTION TO STRIKE CLASS ACTION ALLEGATIONS (DOC. # 56), FILED BY DEFENDANTS UARCO, INC., AND STANDARD REGISTER COMPANY, OVERRULED WITHOUT PREJUDICE TO RENEWAL; MOTION FOR PROTECTIVE ORDER (DOC. # 51), FILED BY DEFENDANTS STANDARD REGISTER COMPANY AND UARCO, INC., OVERRULED WITHOUT PREJUDICE TO RENEWAL**

RICE, Chief Judge.

This anti-trust litigation stems from the Plaintiffs' allegations that the Defendants have engaged in collusive conduct by agreeing not to hire or to solicit one another's sales representatives, and by including "non-compete" provisions in their employment contracts. The Plaintiffs are former sales representatives for Defendants UARCO, Inc., the Standard Register Company, and Moore, U.S.A., Inc. The Plaintiffs now work for Monarch, Inc., which is a competitor of each of the Defendants in the "business forms" production and distribution industry. The Plaintiffs seek to pursue this litigation as a class action on behalf of "[a]ll persons who,

between 1990 and the present, were employed by one of the defendants as a sales representative." (Doc. # 22, First Amended Complaint, at ¶ 14). Pending before the Court are three Motions: (1) a Motion to Strike Class Action Allegations, filed by Defendant Moore U.S.A., Inc. (Doc. # 55); (2) a Motion to Strike Class Action Allegations, filed by Defendants UARCO, Inc., and the Standard Register Company (Doc. # 56); and (3) a Motion for a Protective Order, filed by UARCO and Standard Register (Doc. # 51).[1] As a means of analysis, the Court first will address the Defendants' Motions to Strike. The Court then will turn to the Motion for a Protective Order.

## I. Defendants' Motions to Strike Class Action Allegations (Doc. # # 55–56)

In two similar Motions, the Defendants seek to strike the class action allegations from the Plaintiffs' first amended Complaint, pursuant to Fed.R.Civ.P. 23(d)(4) and S.D. Ohio Loc.R. 23.3. The former rule provides that "the pleadings may be amended to eliminate therefrom allegations as to representation of absent persons . . . ." Likewise, the Local Rule provides that "[n]othing in this rule shall preclude a motion by any party at any time to strike class allegations or to dismiss the complaint." Although the class action issue is before the Court in the context of a preemptive Motion to Strike, as opposed to an affirmative motion from the Plaintiffs to certify a class, a proper analysis nevertheless must begin with Rule 23 of the Federal Rules of Civil Procedure, which governs the maintenance of class actions.

The Supreme Court has held that a District Court must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met when considering the propriety of a class action. *General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Although a District Court has broad discretion with respect to certifying class actions, it must exercise that discretion within the framework of Rule 23. *Cross v. National Trust Life Ins. Co.,* 553 F.2d 1026, 1029 (6th Cir.1977).

The Federal Rules of Civil Procedure mandate a two step process to determine if an action is maintainable as a class action. *First,* the Court must determine whether the four prerequisites to a class action are present. These four prerequisites, referred to as numerosity, commonality, typicality and adequacy of representation, are: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately represent the interests of the class. Fed.R.Civ.P. 23(a). These prerequisites limit class claims to those which are encompassed by the named plaintiffs' claims. *Falcon,* 457 U.S. at 147, 102 S.Ct. 2364. *Second,* if the foregoing prerequisites are satisfied, the Court must then determine whether one of the factual situations described in Rule 23(b) has been established. Specifically, the Court must decide whether: (1) separate actions would create inconsistent results or would be dispositive of the interests of other potential plaintiffs; (2) the party opposing the class has acted, or refused to act, on grounds generally applicable to the class; or (3) issues common to the class predominate over other issues, such that the best method of trying the suit is as a class action.

■ When determining whether a class action may properly be maintained, a District Court may not base its decision upon the merits of a plaintiff's claims. *Weathers v. Peters Realty Corp.,* 499 F.2d 1197, 1201 (6th Cir.1974). This does not mean, however, that the Court may not delve into the factual and legal issues underlying the lawsuit. To the contrary, the Supreme Court has recognized that "the class determination generally

---

**1.** Defendant Moore U.S.A., Inc., has joined in the other Defendants' Motion for a Protective Order.

(*See* Doc. # 53).

involves considerations that are enmeshed in factual and legal issues comprising the plaintiff's cause of action." *Falcon*, 457 U.S. at 155, 102 S.Ct. 2364. " 'Evaluation of many questions entering into determination of class action questions is intimately involved with the merits of the claims. The typicality of the representative's claims or defenses, the adequacy of the representative, and the presence of common questions of law and fact are obvious examples. The more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits....' " *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n. 12, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (quoting 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 3911, p. 485 n. 45 (1976)).

With the foregoing considerations in mind, the Court turns now to the pending Motions to Strike.[2] For purposes of its analysis herein, the Court first finds it necessary to put the pending legal issues into a factual context. The Plaintiffs formerly worked as sales representatives for Defendants UARCO, Moore, and Standard Register. They now work for Monarch, Inc., which is a competitor of the Defendants in the "business forms" industry. In addition to hiring the Plaintiffs, Monarch has hired other former UARCO and Standard Register employees in recent years. In 1998, UARCO and Standard Register brought suit against Monarch and several former UARCO/Standard Register employees (not the Plaintiffs in this litigation) who had joined Monarch to work as sales representatives. In that litigation, Standard Register and UARCO sought, and obtained, preliminary injunctions in Washington and Hawaii, preventing their former employees from violating the terms of their "non-compete" agreements by soliciting Standard Register/UARCO customers for Monarch.[3] (*See* Doc. # 56 at Exh. B).

Fritz Kauffman, a former UARCO supervisor, has provided deposition testimony in which he alleges that Monarch's owners met with him and expressed their frustration at unsuccessfully litigating the "non-compete" cases against Standard Register and UARCO. (Kauffman depo. at 419–420, 424–426, 437–438, Doc. # 56 at Exh. D). According to Kauffman, the litigation against Standard Register and UARCO has cost Monarch more than $500,000. (*Id.* at 420). In his deposition, Kauffman also inferred that Monarch devised the present litigation as a means to challenge the Defendants' "non-compete" agreements. (Doc. # 113, at 425–428). Monarch vigorously denies that allegation.

In any event, the present action appears to have been spawned, at least in part, by the dispute between Monarch and the Defendants.[4] After joining Monarch, Plaintiff Harriet Hara received a telephone call from one of the company's owners, Tom Majors, who informed her about this lawsuit. (Doc. # 56, Exh. H, at 64). Majors told Hara that she possibly could participate as a class representative. (*Id.* at 65). Majors also told her to expect a telephone call from Paul Parilla, Monarch's general counsel. (*Id.* at 65). She subsequently decided to become a plaintiff in the present litigation "when Mr. Parilla asked" her to do so. (*Id.* at 72).

In his deposition, Plaintiff Bill Kusumoto acknowledged receiving a similar telephone call from Tom Majors, who "mentioned that there was an agreement that they were looking into that is a class action and that Mr. Parilla would be giving [him] a call." (*Id.* at Exh. K, p. 54). Finally, Plaintiff Eugene Thomas, the initial class representative, testified in his deposition that he first considered being a party to the present litigation after he "was talked to about it." (*Id.* at Exh. J, p. 83). Thomas also testified about his aware-

---

2. Because the two Motions raise essentially the same arguments, the Court will address them together.

3. Monarch was not named as a defendant in the Hawaii litigation.

4. On May 17, 1999, the Plaintiffs informed the Court that the "non-compete" litigation in Hawaii and Washington settled in April, 1999. (Doc. # 108).

ness "that there was going to be some other people that were involved," and that he "was contacted about it." (*Id.* at 109). None of the three named Plaintiffs will incur any financial obligation as a result of pursuing the present litigation, regardless of the outcome. (Thomas depo. at 107; Kusumoto depo. at 86–87; Hara depo. at 76–78). Furthermore, Thomas, the original class representative, played no role in selecting class counsel because he "wasn't asked to." (Thomas depo. at 109, 111). Rather, Paul Parilla, Monarch's general counsel, recommended a firm. Thomas subsequently signed a retainer with the recommended firm and also authorized Parilla and his firm to conduct an investigation "and prosecute this case...."[5]

In connection with the Motions currently pending, the Plaintiffs have provided the Court with a number of declarations from themselves, from Parilla, and from Monarch representatives. Among other things, the declarations state that Monarch neither pressured the Plaintiffs into pursuing the present litigation, nor promised them anything in return for doing so. Nevertheless, the Plaintiffs' own deposition testimony reveals that Monarch and its counsel undeniably played a key role in the commencement of this action. Against that backdrop, the Court turns now to the allegations contained in the Plaintiffs' first amended Complaint.

In support of their anti-trust claim, the Plaintiffs allege, among other things, that "beginning sometime prior to 1970 and continuing to the present, the defendants and their co-conspirators entered into a series of agreements not to compete with one another for the services of sales representatives." (First Amended Complaint, Doc. # 22 at ¶ 24). According to the Plaintiffs, "[t]he purpose and effect of these agreements was to restrict the movement of plaintiffs and the other members of the class and to stabilize and reduce the price for their services." (*Id.*) They further allege that "[o]ne mechanism by which the defendants and their co-

conspirators carried out their agreement not to compete with one another for the services of sales representatives was to use substantially identical 'Salesman's Agreements' that prohibited any sales representative from soliciting his or her former customers or selling competitive products to his or her former customers." (*Id.* at ¶ 25). The Plaintiffs also contend that "[t]he purpose of the defendants and their co-conspirators in using substantially identical Salesman's Agreements was to prevent the free movement of sales representatives between competitors, thereby stabilizing and reducing the price of their services." (*Id.* at ¶ 27). Furthermore, the Plaintiffs allege that "[i]n addition to agreeing to utilize substantially identical Salesman's Agreements in order to make it more difficult for sales representatives to leave the employ of one defendant and begin employment with another, the defendants and their co-conspirators entered into an agreement not to hire each other's current or former sales representatives at all." (*Id.* at 28). As a result, "a sales representative employed by one of the defendants or their co-conspirators who wanted to change jobs had no choice but to accept employment with a smaller competitor, or leave the industry." (*Id.* at 28).

In their first amended Complaint, the Plaintiffs seek to pursue the foregoing allegations, and others, on behalf of "[a]ll persons who, between 1990 and the present, were employed by one of the defendants as a sales representative." (*Id.* at ¶ 14). A review the Plaintiffs' deposition testimony suggests, however, that they are questionable candidates to pursue such claims on behalf of the class. In his deposition testimony, Eugene Thomas testified that *in 1970* he first discovered the existence of an agreement among UARCO, Standard Register, and Moore not to hire each other's sales representatives. (Thomas depo. at 145–146). Thomas made this discovery while being trained to interview and to hire job applicants. (*Id.*) Furthermore, Thomas testified that class representative Harriet Hara "worked for UARCO,

5.  Although Parilla initially represented the Plaintiffs in this action, he has withdrawn as counsel.

and she knew the same facts that [he] knew regarding being able to work for—make application to Moore or Standard Register for employment as an employee of UARCO." (*Id.* at 113). When pressed about the basis for his belief that Hara was aware of the mutual no-hire agreement, Thomas replied that the existence of such a policy was "common knowledge" among employees. (*Id.* at 113).[6]

In her own deposition, Hara admitted discovering sometime "in the 1990s" that UARCO and Standard Register had an agreement not to hire each other's salespeople. (Hara depo. at 54). Specifically, Hara heard "[p]robably more than once" that the Defendants had a "gentleman's agreement" not to hire each other's reps. (*Id.* at 55). She nevertheless could not remember any details, because "so much time has passed." (*Id.* at 57). In addition to a possible statute of limitations problem, Hara's anti-trust claims face an additional impediment. She first learned of the present lawsuit in July, 1998, and decided to become a class representative that same month. (*Id.* at 63). She signed a general release on August 10, 1998, however, releasing Standard Register "from any and all claims, salaries, commissions, and/or monies claimed by me . . . ." (Doc. # 56 at Exh. I).[7] Finally, Bill Kusumoto testified that he first heard in *the 1980s* about the existence of a "salesman's agreement" which prevented him from working for another "major" in the industry. (Kusumoto depo. at 19–20). Kusumoto received this information from an UARCO manager. (*Id.* at 20).

■ In light of the foregoing deposition testimony, the Plaintiffs appear to be curious choices to pursue the present litigation as class representatives. In their amended Complaint, the Plaintiffs assert a cause of action under the Clayton Act, which has a four-year statute of limitations. 15 U.S.C. § 15b. In an effort to avoid this statute of limitations, the Plaintiffs plead fraudulent concealment by the Defendants. (*See* First Amended Complaint, Doc. # 22 at ¶ 34). In order to establish fraudulent concealment, the Plaintiffs must plead and prove: (1) wrongful concealment of their actions by the Defendants; (2) failure to discover the operative facts that are the basis of their cause of action within the limitations period; and (3) the exercise of due diligence until discovery of the facts. *State of Ohio ex rel. Fisher v. Louis Trauth Dairy, Inc.,* 856 F.Supp. 1229, 1236 (S.D.Ohio 1994).

In the present case, however, proposed class representative Thomas has testified that he became aware of the Defendants' alleged no-hire agreement thirty years ago, and that the existence of such a policy was *common knowledge.* This testimony makes him a poor candidate to represent a class pinning its hopes on a fraudulent concealment theory. *Cf. Bill Minnielli Cement Contr., Inc. v. Richter Concrete Corp.,* 62 F.R.D. 381, 390 (S.D.Ohio 1973) (Porter, J.) ("William Minnielli[,] having admitted that he knew for years of price tampering, equal pricing, and collusion, seems a poor representative for any class member who had a valid fraudulent concealment claim.") Nor do the two other proposed class representatives fare much better. Kusumoto admitted having knowledge of a no-hire "salesman's agreement" in the 1980s. For her part, Hara signed a general release waiving all claims that she might possess, and she faces a potential statute of limitations problem as well. *Cf. Robinson v. Sheriff of Cook County,* 167 F.3d 1155, 1158 (7th Cir.1999) (recognizing that if a plaintiff's claim "is a *clear* loser at the time he asks to be made class representative, then approving him as a class representative can only hurt the class").

---

6. Specifically, Thomas testified: "She worked for UARCO for a long time, and it was common knowledge throughout people that have been with the company that we were not allowed to apply to Standard Register or Moore because we would not be hired, and that their salesmen could not apply to us because we would not hire them." (*Id.* at 113).

7. Given that UARCO merged into Standard Register on January 1, 1998, Hara's release also likely covered any claims that she might have had against UARCO. (*See* Hara depo. at 29).

■ Although the Plaintiffs acknowledge the foregoing potential statute of limitations and release problems, they insist that the Court may not consider such "merits" issues when addressing class certification. The Court's own research into this issue has revealed conflicting case law with respect to the propriety of denying class certification on the basis of a statute of limitations or similar defense.[8] One issue, however, is clear: If the Plaintiffs' claims ultimately are found to be barred by the statute of limitations, or another defense, then they will not be eligible to participate as class representatives. *See, e.g., Robinson,* 167 F.3d at 1155; *Great Rivers Co-op. of S.E. Iowa v. Farmland Indus.,* 120 F.3d 893, 899 (8th Cir.1997) ("Inherent in Rule 23 is the requirement that the class representatives be members of the class. . . . Here, Tacey is not and cannot be a class member because his claim is time barred; consequently, he cannot represent the class."); *Hardy v. City Optical, Inc.,* 39 F.3d 765, 770 (7th Cir.1994) ("[O]nce dismissed from the suit the plaintiff can no longer be the class representative. . . . At that point, either another class representative must be found . . . or the suit is kaput."); *Weinberger v. Retail Credit Co.,* 498 F.2d 552, 556 (4th Cir.1974) ("Furthermore, being barred from suit himself, Weinberger is not a member of the class he seeks to represent under section 16 and thus does not fulfill the first prerequisite of Fed.R.Civ.P. 23(a)."); *Wenning v. Jim Walter Homes, Inc.,* 606 F.2d 784, 785 (7th Cir.1979); *Lockaby v. Top Source Oil Analysis, Inc.,* 998 F.Supp. 1469, 1472 (N.D.Ga. 1998) ("[B]ecause the Court finds that plaintiff's claims are time-barred and plaintiff has not identified another individual who could serve as class representative, this suit cannot be maintained as a class action."); *Young v. Lehigh Corp.,* 1989 WL 117960 (N.D.Ill. Sept.28, 1989) ("If the named plaintiff is not a member of the class he purports to represent, he cannot be expected to fairly and adequately represent the interests of the class. . . . For example, a plaintiff whose individual claims would be barred by the statute of limitations is not part of the class and, therefore, is not an appropriate representative.").

■ In the present case, the Court is reluctant to certify a class with Thomas, Hara, and Kusumoto as its representatives, particularly given the real possibility that some of all of those Plaintiffs may well be vulnerable to a motion for summary judgment.[9] The Court also recognizes that the present litigation appears to have been conceived of, and initiated by, representatives of Monarch, an acknowledged major competitor of the Defendants. Additionally, the Court notes that Monarch representatives approached the Plaintiffs about pursuing the present litigation while Monarch was engaged in active, and by some accounts, unfruitful litigation against UARCO and Standard Register. Even if Monarch did not pressure the Plaintiffs into commencing this action, it certainly facilitated their doing so. Although the Court has no reason to question the legality of Monarch's actions, it cannot agree with the Plaintiffs' argument that the origin of the present dispute is "irrelevant."[10] In short,

---

**8.** The Plaintiffs cite *Bittinger v. Tecumseh Products Co.,* 123 F.3d 877 (6th Cir.1997) in support of their argument that Hara's release does not preclude her from serving as a class representative. Notably, however, the proposed class representative in *Bittinger* had signed a release, along with two-thirds of the other class members. Therefore, the class members' claims rose and fell along with the named plaintiff's claim. In the present case, the Plaintiffs have not identified *any* other class members who signed a release similar to Hara's. In any event, the Sixth Circuit has also recognized that "plaintiffs have no basis for complaining of a refusal to certify a proposed class where the representatives of the class cannot prevail on the merits. . . ." *Sprague*

*v. General Motors Corp.,* 133 F.3d 388, 397 (6th Cir.1998).

**9.** In making this observation, the Court does not intend to suggest that it has predetermined its ruling on any such motion. Rather, the Court merely notes that the statute of limitations and/or release issues are obvious *potential* problems.

**10.** Indeed, Sixth Circuit case law gives the Court some reason to believe otherwise. Under Fed. R.Civ.P. 23(a), the Court must consider, among other things, whether the named Plaintiffs will fairly and adequately represent all class members. Construing nearly identical language under Fed.R.Civ.P.23.1, which applies to share-

the present lawsuit was initiated by Monarch, and is now being advanced by three Monarch employees who have nothing to lose,[11] and quite possibly, nothing to gain,[12] no matter what the outcome of the present dispute.[13] On the other hand, if the Court permits the present litigation to proceed as a class action, that decision alone will undoubtedly subject the Defendants to extensive discovery demands and substantial litigation expense. In fact, the Plaintiffs contend that they still need to engage in substantial discovery in order to "effectively make their case" and demonstrate that this litigation *should* be certified as a class action. (Doc. # 79 at 55). Among other things, the Plaintiffs seek to obtain discovery that will demonstrate the predominance of common issues under Fed.R.Civ.P. 23(b)(3), particularly common issues with respect to impact or causation.[14] (Stewart declaration, Doc. # 88 at 1–2).

■ In light of the concerns identified above, however, the Court believes that the most appropriate approach in the present case is to defer resolving the class certification question, until after affording the Defendants an opportunity to file a motion for summary judgment with respect to the statute of limitations and release issues discussed, *supra.* The Sixth Circuit has recognized that "[i]t is reasonable to consider a Rule 56 motion first [ (before ruling on a motion for class certification) ] when early resolution of a motion for summary judgment seems likely to protect both parties and the court from needless and further litigation.' " *Thompson v. County of Medina, Ohio,* 29 F.3d 238, 241 (6th Cir.1994), quoting *Wright v. Schock,* 742 F.2d 541, 544 (1984); *see also Marx v. Centran Corp.,* 747 F.2d 1536, 1552 (6th Cir.1984) (rejecting the proposition that "in all cases the determination of the propriety of a class action must precede any consideration of the merits"); *Gwirtz v. Ohio Educ. Ass'n,* 887 F.2d 678, 683 (6th Cir.1989) ("We also agree that the district court did not err

holders bringing an action on behalf of other shareholders, the Sixth Circuit has recognized that an individual's motivation for bringing a suit in federal court *is* relevant. *See Davis v. Comed, Inc.,* 619 F.2d 588, 593 (6th Cir.1980); *Granada Investments, Inc. v. DWG Corp.,* 962 F.2d 1203 (6th Cir.1992). In reaching this conclusion, the Sixth Circuit has recognized that Rule 23.1 prohibits such an action "if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders...." *Nolen v. Shaw–Walker Co.,* 449 F.2d 506, 510 (6th Cir.1971). The court also has identified several factors which may suggest inadequate representation: (1) antagonistic economic interests between the representative and the class; (2) vindictiveness on the part of the plaintiff; and (3) evidence that the named plaintiff is not in fact the moving force behind the litigation. *Granada,* 962 F.2d at 1208; *see also Davis,* 619 F.2d at 596 (reasoning that "a plaintiff does not fairly and adequately represent the shareholders when the action is in fact controlled by another individual, with antagonistic economic interests"); *Id.* at 597 ("This derivative action appears to be just one more skirmish in a larger war between Davis and some of the defendants, perverted into a weapon which, as its highest and best use, would be leverage in his other suits").

11. As noted, *supra,* the Plaintiffs have refused to reveal the source of their financing for the present lawsuit, but they have testified that they will incur no financial obligation, no matter what the outcome.

12. If the Defendants' statute of limitations and release arguments prove persuasive, the Plaintiffs will be vulnerable to a motion for summary judgment, thereby precluding them from recovering damages. Although the Plaintiffs also seek injunctive relief, they no longer work for the Defendants and cannot harbor any realistic expectation of ever returning to such employment.

13. *Cf. Robinson v. Sheriff of Cook County,* 167 F.3d 1155, 1157 (7th Cir.1999) ("[I]f when class certification is sought it is already apparent ... that the class representative's claim is extremely weak, this is an independent reason to doubt the adequacy of his representation. [citations omitted]. One whose own claim is a loser from the start knows that he has nothing to gain from the victory of the class, and so he has little incentive to assist or cooperate in the litigation; the case is then a pure class action lawyer's suit. [citation omitted]. Finally, if the class representative's claim is both weak *and* typical—if the case as a whole is as weak as the representative's individual claim—then the case should be dismissed with or without class certification.").

14. The Defendants have provided the Court with proposed interrogatories and document production requests related to the "predominance" issue. (Doc. # 88, Stewart declaration).

in refusing to rule on the plaintiff's motion for class certification ... and given our affirmance of the decision of the district court in favor of the [defendant], we decline to order the district court, as the plaintiffs seek, to now certify the class").

■ Others also have recognized that, in appropriate cases, a District Court may utilize an "accelerated summary judgment procedure" to winnow out substantively deficient class actions, prior to class certification:

> ... [I]t is now clear that an inquiry into the merits is not a proper consideration during the class certification process. Notably, this does not necessarily mean that the defendant may be subject to harassing expense or adverse publicity attendant to a class suit if the plaintiffs' claims are not meritorious. In appropriate cases, the court may use an accelerated summary judgment procedure prior to class certification to test plaintiff's right to proceed to trial. [In such a case,] the court is not assessing whether there is a substantial possibility that plaintiff will prevail for purposes of deciding whether class certification is appropriate, but is determining that there are no genuine issues of material fact and that defendant is entitled to prevail as a matter of law on the underlying dispute.

7B Charles Arthur Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1785, p. 127–128 (1986).[15]

For the reasons set forth above, the Court will grant the Defendants an opportunity to file a motion for summary judgment, directed to the specific claims of the individual Plaintiffs who seek to represent the class, before it resolves the class certification issue.[16] If the Plaintiffs' claims withstand such a motion, the Court then will address the class certification issue. On the other hand, if the Plaintiffs' claims do not survive a motion for summary judgment, then they will "have no basis for complaining of a refusal to certify a proposed class...." *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). The Defendants must file their motions for summary judgment not later than the motion filing deadline of December 3, 1999, unless excused from doing so by the express order of the Court. Accordingly, the Motions to Strike filed by Defendants Moore, Inc. (Doc. # 55), and by UARCO and Standard Register (Doc. # 56) are hereby overruled, without prejudice to renewal.

II. *Defendants' Motion for a Protective Order (Doc. # 51)*

Also pending before the Court is a Motion for a Protective Order, filed by Standard

15. *Cf. Wenning v. Jim Walter Homes, Inc.*, 606 F.2d 784, 785 (7th Cir.1979) ("Plaintiff also contends that the district court erred in failing to decide the class action question before reaching the summary judgment motion. The court proceeded in the sequence complained of because the plaintiff's capacity to represent the class depended upon whether his own claim was barred. *The determination that plaintiff's claim was barred meant that plaintiff could not adequately represent the class ... and no other class action issue remained to be decided.* Under these circumstances it was not error to reach the statute of limitations issue before deciding the class issue.").

16. *See also Boards of Managers of Dunbar Lakes Condominiums v. Dunbar Homes, Inc.*, 1985 WL 1379 (N.D.Ill. May 15, 1985):

> In the present case Defendants have taken every opportunity to inform the Court that statute of limitation problems plague this lawsuit. Defendants even suggest the named class representative may be unable to adequately represent the class of original condominium

owners. *See Wenning v. Jim Walter Homes, Inc.*, 606 F.2d 784, 785 (7th Cir.1979). Indeed, resolution of the various statute of limitation issues may in fact define the class in this case. This not to say, however, that this case may not be maintained as a class action. The court believes the most expeditious manner of proceeding with this suit is to reach as many statute of limitation issues as possible prior to ruling on the certification of a class. After the statute of. limitation issues are decided the Court will be in a better position to assess *Defendants' arguments in opposition to class* certification. Consequently, at this stage in the lawsuit, Defendants' motion to dismiss the class action allegations found in Counts IV through VII must be denied....

> ... Accordingly, Defendants are ordered to present motions based on the statute of limitation on or before the next status hearing in this case (30 days from the date of this order) and the Plaintiffs are ordered to present a motion for class certification within 30 days of the Court's ruling on Defendants' motions.

Register and UARCO.[17] The Defendants' Motion relates to certain discovery sought by the Plaintiffs in this matter. Upon review, however, the Court notes that the Plaintiffs seek extensive discovery of documents and records dating back to 1990. Those requests may be justified and reasonable, *if* this litigation ultimately proceeds as a class action. Given the Court's concern about the viability of the named Plaintiffs' claims, however, it will resolve the current discovery dispute after the Court rules on the Defendants' motion for summary judgment, and, if the named Plaintiffs' claims survive such a motion, after resolving the class certification issue.[18] The Defendants suggest, and the Court agrees, that the scope of the parties' present discovery dispute will be narrowed significantly once the issue of class certification is resolved.[19] Accordingly, the Defendants' Motion for a Protective Order (Doc. # 51) is hereby overruled, without prejudice to renewal.

---

**17.** Defendant Moore has joined in the Motion for a Protective Order. (Doc. # 53).

**18.** More specifically, the Court will defer ruling on all discovery until after resolving the summary judgment motion. If the named Plaintiffs' claims survive summary judgment, or if the Defendants elect not to file such a motion at this time, and are excused from doing so by the Court, then the Court will rule immediately upon the Plaintiffs' request for discovery directed toward the class certification issue.

**19.** *Cf. National Organization for Women v. Sperry Rand Corp.*, 88 F.R.D. 272, 276 (D.Conn.1980) ("To spend either three million or three hundred thousand dollars, in order to move a mountain of documents and statistics from the defendant's facilities to the plaintiffs' offices, would be, in this pre-certification context, a wasteful and unjustifiable action.").