OPINION
{¶ 1} Plaintiffs-appellants, Clifford and Shannon Rece and Christopher and Amanda Endl, appeal from judgments of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Valuation Resources, Inc., and, in addition, denying plaintiffs' joint motion requesting that the trial court stay a decision on the merits of plaintiffs' claims pending resolution of plaintiffs' motion for class certification. For the reasons that follow, we affirm. *Page 2 
 {¶ 2} On February 21, 2006, plaintiffs filed a class-action complaint alleging that from November 16, 1999 through the present, Dominion Homes, Inc. ("Dominion Homes"), Dominion Homes Financial Services, Ltd. ("DHFS") (where appropriate, collectively "the Dominion defendants") and defendant together induced consumers, including the named and putative plaintiffs, to purchase new homes constructed by Dominion Homes at prices exceeding the actual market value of the homes through a scheme of zero down payment incentives known as "Nehemiah type grants" and special financing incentives known as "interest rate buy downs." (Complaint, ¶ 1.) Plaintiffs asserted that a "Nehemiah type grant" is one whereby the FHA-required minimum down payment is "gifted" to a purchaser from a non-profit 501(c)(3) corporation with no requirement that the purchaser repay the gift amount to the charitable organization. Id., ¶ 2.
 {¶ 3} Plaintiffs further alleged that the zero down payment incentive involved Dominion Homes refunding the gift amount and paying a premium to the charitable organization and building the cost of the gift and the premium into the sale price of the home without disclosing as much to the purchaser. Id., ¶ 3. Plaintiffs further alleged that Dominion Homes also built the price of other financing incentives into the sale price of the home, including buy downs and other financing costs, without disclosing as much to the purchaser. Id., ¶ 4. Plaintiffs further asserted that the effect of the scheme employed by Dominion Homes is to sell homes to unsuspecting consumers worth far less than the amount financed and less than the amount of the appraisal. Id., ¶ 5.
 {¶ 4} In addition, plaintiffs asserted that defendant, the valuation company that performed all of the appraisals for the Dominion defendants, purposely overvalued the *Page 3 
homes in order to include the cost of the Nehemiah grant and the premium into the appraised value of the home so as to artificially inflate the sale price. Id., ¶ 6. Plaintiffs alleged that:
 Defendants knew, or should have known that plaintiffs would rely upon the representations and inducements of the defendants to purchase their homes for a price plaintiffs and the Class believed reflected the actual market value of the home and knew that plaintiffs and the Class would not have completed the transactions with the Dominion defendants had plaintiffs and the Class known that defendants inflated the value of the homes and built the cost of the Nehemiah type grants and other financing incentives into the sale price of the home.
Id., ¶ 8.
 {¶ 5} Based upon these allegations, plaintiffs raised claims of fraud and negligent misrepresentation against defendant and the Dominion defendants. More specifically, with regard to the fraud claim, plaintiffs alleged that "[defendants made false representations to plaintiffs regarding the value of the properties sold and despite having a duty to fully disclose that the Nehemiah type grants and other financing incentives were built into the price of the home, defendants failed to disclose those material facts * * *" Id., at ¶ 38. As to the negligent misrepresentation claim, plaintiffs asserted that "[defendants failed to exercise reasonable care when providing the false information to plaintiffs and the Class about the difference between the appraised value of their homes and the real value of their homes and defendants failed to exercise reasonable care in providing false information to plaintiffs and the Class about the cost of the Nehemiah type grants and the special financing being built into the price of the homes." Id., ¶ 45. Plaintiffs also asserted claims against the Dominion defendants for unjust enrichment, *Page 4 
violation of R.C. 1322.07 and R.C. Chapter 1345, the Ohio Predatory Lending Act, and violation of common law predatory lending practices. Plaintiffs subsequently amended their complaint to add claims against defendant and the Dominion defendants for monetary damages and rescission under R.C. Chapter 1345, the Ohio Consumer Sales Practices Act ("CSPA"), and civil conspiracy.
 {¶ 6} Plaintiffs later moved for class certification pursuant to Civ.R. 23. Plaintiffs requested the trial court certify a class consisting of "all persons in the United States who purchased a new home in Ohio from Dominion Homes, Inc. or any of its subsidiaries or authorized agents that was financed through the use of a `Nehemiah type' grant for the down payment from November 16, 1999 to the present, and who still have title to the subject property." Plaintiffs indicated that the class numbered 4,773 members. Neither defendant nor the Dominion defendants opposed the motion.
 {¶ 7} The Dominion defendants and defendant separately filed assorted motions seeking dismissal of various claims asserted by plaintiffs. Pursuant to those motions, the trial court dismissed: (1) plaintiffs' claims against the Dominion defendants and defendant for monetary damages under the CSPA; (2) plaintiffs' claims against the Dominion defendants for common law and statutory predatory lending; (3) plaintiffs' individual claims against the Dominion defendants for rescission under the CSPA; and (4) all class-action claims against the Dominion defendants under the CSPA.
 {¶ 8} Defendant also filed separate motions for summary judgment against the Endls and Reces on their remaining claims for fraud, negligent misrepresentation, rescission under the CSPA and civil conspiracy. The Endls and Reces filed separate memoranda contra, along with a joint motion requesting the trial court stay its rulings on *Page 5 
the motions for summary judgment until the trial court ruled on the class certification issue. Defendant filed a memorandum contra plaintiffs' motion to stay.
 {¶ 9} On February 6, 2007, the trial court issued two separate decisions denying plaintiffs' motion to stay and granting summary judgment against the Endls and the Reces based upon their failure to identify any evidence in their respective memoranda contra demonstrating a genuine issue of material fact for trial. The trial court journalized its decision in a judgment entry filed February 15, 2007.
 {¶ 10} On March 28, 2007, plaintiffs voluntarily dismissed the remaining claims against the Dominion defendants without prejudice pursuant to Civ.R. 41(A)(1). On April 10, 2007, plaintiffs filed their notice of appeal from the trial court's February 15, 2007 judgment entry. Plaintiffs advance two assignments of error, as follows:
 THE TRIAL COURT ERRED BY FAILING TO CONSIDER THE MOTION FOR CLASS CERTIFICATION BEFORE RULING ON THE MERITS OF THE CLAIMS AGAINST VALUATION RESOURCES, INC.
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT BECAUSE GENUINE ISSUES OF MATERIAL FACT REMAINED IN DISPUTE ON EACH SUBSTANTIVE CAUSE OF ACTION PRESENTED.
 {¶ 11} Plaintiffs' first assignment of error contends the trial court abused its discretion in failing to consider their motion for class-action certification prior to ruling on the merits of plaintiffs' claims. We disagree.
 {¶ 12} "[T]he timeliness of * * * a decision [on the maintainability of a class-action] is left to the discretion of the trial court, dependent upon the facts and circumstances of each case." Horvath v.State Teachers Retirement Bd. (Mar. 31, 1995), Franklin App. No *Page 6 
94APE07-988, citing Selesky v. Veteran's Club (Dec. 30, 1984), Summit App. No. 11681. "The only requirement is that such determination be made `at a time fair and reasonable to all parties.'" Id., quotingSelesky. In some circumstances, certification of the cause as a class-action prior to a determination on the merits of the claim "may result in unnecessary discovery procedures and the unjustified and unnecessary expenditure of judicial time and energy needed to determine a class-action." Id.
 {¶ 13} We considered such circumstances in Castillo v. Nationwide Fin.Serv., Inc., Franklin App. No. 02AP-1393, 2003-Ohio-4766, wherein we held that "[a] court may defer a class certification question until after deciding the defendant's motion for summary judgment, thus `winnow[ing] out substantively deficient class-actions, prior to certification.'" Id. at ¶ 26, quoting Thomas v. Moore U.S.A., Inc.
(S.D.Ohio 1999), 194 F.R.D. 595, at 603, following Thompson v. Cty. ofMedina, Ohio (C.A.6, 1994), 29 F.3d 238, and 7B Charles Arthur Wright, Arthur R. Miller Mary Kay Kane, Federal Practice and Procedure (1986), Section 1785, at 127-128. Likewise, in Smith v. State TeachersRetirement Bd. (Feb. 5, 1998), Franklin App. No. 97APE07-943, we stated that "there is no requirement that the trial court rule on a motion to certify a class before the case in chief. In fact, the need to make a class certification decision may be rendered moot by deciding the case on its merits." Id.
 {¶ 14} Other courts have held similarly. In Jung v. Envirotest Syst.Corp., Cuyahoga App. No. 87604, 2006-Ohio-6278, the court rejected the plaintiff's contention that the trial court abused its discretion in denying his motion for class certification as moot. The court noted that the trial court had determined that summary judgment for the defendant was proper, rendering the plaintiff's motion moot. The court determined that "it *Page 7 
would have been futile for the court to make a determination on the issue of class certification when it found that no genuine issue of material fact remained to be litigated." Id. at ¶ 30.
 {¶ 15} At oral argument, plaintiffs maintained that it was imperative that the trial court address the motion for class certification prior to ruling on defendant's motions for summary judgment in order to provide guidance to the plaintiffs on class issues such as whether the named plaintiffs adequately represented the interests of the class and to allow plaintiffs adequate time to conduct further discovery related to potential class members. Plaintiffs suggested that they argued as much in their motion for stay; indeed, plaintiffs described the motion as one implicitly couched in terms of Civ.R. 56(F). Civ.R. 56(F) provides that "[s]hould it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."
 {¶ 16} A review of the motion to stay belies plaintiffs' claim. Plaintiffs offered no affidavit testimony asserting the need for guidance on the class issue or additional time to conduct discovery or that they otherwise could not adequately defend against defendant's summary judgment motions. Indeed, plaintiffs filed their memorandum contra defendant's motion for summary judgment contemporaneously with their motion to stay. Further, there is no other indication in the record that plaintiffs needed or requested additional time to obtain discovery with respect to their request for class certification. *Page 8 
 {¶ 17} As noted, a trial court has wide discretion in establishing the timing and order of class-action proceedings. Horvath, supra. Here, plaintiffs failed to establish their need for additional time for discovery related to their class-action. In its decision on defendant's motions for summary judgment, the trial court determined that the claims remaining against defendant were so fact specific as to raise serious questions as to whether such claims were of the type that should be certified as a class-action. Having so found, the trial court refused to stay its decision on the summary judgment motions and immediately proceeded to address the merits of plaintiffs' claims. The court ultimately concluded that no genuine issues of material fact remained to be litigated. Under the facts and circumstances of this case, the trial court did not abuse its discretion in its treatment of either plaintiffs' motion for class certification or plaintiffs' motion to stay the ruling on the merits of plaintiffs' claims. Accordingly, the first assignment of error is not well-taken.
 {¶ 18} Plaintiffs' second assignment of error contends the trial court erred in granting defendant's motions for summary judgment. Specifically, plaintiffs maintain that genuine issues of material fact remain in dispute on their claims for fraud, negligent misrepresentation, and civil conspiracy. Plaintiffs have not asserted error in the trial court's disposition of their claims for rescission under the CSPA; accordingly, we will not address those claims. App.R. 12(A)(2).
 {¶ 19} An appellate court reviews a summary judgment disposition independently and without deference to the trial court's determination.Brown v. Scioto Cty. Bd. Of Commrs. (1993), 87 Ohio App.3d 704, 711. In conducting such a review, an appellate court applies the same standard employed by the trial court. Maust v. Bank One, *Page 9 Columbus, N.A. (1992), 83 Ohio App.3d 103, 107. Accordingly, an appellate court "review[s] the same evidentiary materials that were properly before the trial court at the time it ruled on the summary judgment motion." Am. Energy Serv., Inc. v. Lekan (1992),75 Ohio App.3d 205, 208.
 {¶ 20} Pursuant to Civ.R. 56(C), summary judgment is appropriate only where the evidence demonstrates that (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence mostly strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. State ex rel. Grady v. State Emp. Relations Bd. (1997),78 Ohio St.3d 181, 183. In determining a summary judgment motion, a court may consider only "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." Civ.R. 56(C). Any doubts must be resolved in favor of the nonmoving party. Viock v.Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12.
 {¶ 21} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record demonstrating the absence of a genuine issue of material fact on the essential elements] of the nonmoving party's claims." Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The moving party may not satisfy its initial burden simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Id. Rather, the moving party must support its motion by pointing to some evidence of the type set forth in Civ.R. 56(C) which affirmatively *Page 10 
demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. Id. "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." Id. However, once the moving party discharges its initial burden, the nonmoving party bears a reciprocal burden of setting forth specific facts demonstrating there is a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Civ.R. 56(E); Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 22} We first review the trial court's grant of summary judgment for defendant as to the Endls' claims for fraud and negligent misrepresentation. The elements of fraud are: "`(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.'" State ex rel. Illuminating v.Cuyahoga Cty. Court of Common Pleas, 97 Ohio St.3d 69, 2002-Ohio-5312, at ¶ 24, quoting Russ v. TRW, Inc. (1991), 59 Ohio St.3d 42, 49. One may commit fraud not only by affirmative misrepresentation or concealment, but also by nondisclosure when there is a duty under the circumstances to disclose. Parahoo v. Mancini (Apr. 14, 1988), Franklin App. No. 97APE08-1071.
 {¶ 23} Negligent misrepresentation is defined as "`[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a *Page 11 
pecuniary interest, supplies false information for the guidance of others, in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'" (Emphasis sic.) Delman v.Cleveland Heights (1989), 41 Ohio St.3d 1, 4, quoting 3 Restatement of the Law 2d, Torts (1965) 126-127, Section 552(1). (Further citations omitted.) Liability for negligent misrepresentation is based upon the actor's negligence in failing to exercise reasonable care or competence in supplying accurate information. Marasco v. Hopewell, Franklin App. No. 03AP-1081, 2004-Ohio-6715, at ¶ 53. (Citation omitted.) A claim for negligent misrepresentation does not lie for omissions; rather, there must be an affirmative false statement. Leal v. Holtvogt (1998),123 Ohio App.3d 51, 62.
 {¶ 24} Defendant supported its motion seeking summary judgment on the Endls' claims with the depositions of Christopher and Amanda Endl and the exhibits attached to those depositions. Those materials establish the following pertinent facts.
 {¶ 25} On January 10, 2003, Amanda Powers (nka Endl) entered into a Home Purchase Agreement ("purchase agreement") to purchase a newly constructed condominium home from Dominion Homes. Christopher signed the purchase agreement the next day. On the same day, the Endls applied for financing through DHFS. The Dominion Homes salesperson informed them that Dominion Homes could secure a monetary gift from the Nehemiah Corporation to be utilized to pay the down payment required by DHFS and that DHFS offered a financing package whereby the interest rate on a mortgage loan obtained through DHFS would increase incrementally for the first three years of the 30-year mortgage to a capped rate for the remaining 27 years (known *Page 12 
as a "3:2:1 buydown"). A "Mortgage Selection Addendum" and "Zero Down Financing Addendum (Z)" attached to the purchase agreement referenced both the gifted down payment and the 3:2:1 buydown. The Endls did not question either the gifted down payment or the 3:2:1 buydown because they assumed both were typical financing incentives to help first-time homebuyers purchase homes. Although they were made aware they were not required to finance the purchase through DHFS, they ultimately chose to do so.
 {¶ 26} As part of the financing process with DHFS, the Endls on January 14, 2003, executed several documents including an "Affiliated Business Disclosure," a "Buydown and Future Payment Disclosure," and a "Servicing Disclosure Statement." The "Affiliated Business Disclosure" ("ABD") disclosed that Dominion Homes was affiliated through common ownership with DHFS. The ABD also identified defendant, under the category of "Service Providers," as the appraiser/inspector. The ABD stated that "[DHFS] is allowed to require the use of an attorney, credit reporting agency and real estate appraiser to represent the lender's interest." In signing the ABD, the Endls acknowledged that "(we) have read this disclosure form, and understand the Builder is referring * * * (us) to purchase the above described settlement services from the Lender, and may receive financial or other benefits as a result of this referral. * * * (We) also understand there is a business relationship between the Lender and the above listed Service Providers." The "Buydown and Future Payment Disclosure" statement set forth in detail the mechanics of the 3:2:1 buydown, including the "total buydown contribution." The "Servicing Disclosure Statement" included an "Appraisal Disclosure" informing the Endls they were entitled to a copy of the appraisal report obtained in connection with their loan application. *Page 13 
 {¶ 27} Thereafter, DHFS ordered an appraisal from defendant as part of the loan underwriting process. Defendant inspected the property on February 3, 2003 and prepared an appraisal report on February 26, 2003.
 {¶ 28} The Endls closed on the home on March 7, 2003. At the closing, they signed numerous documents, including a HUD-1 settlement statement, a "Gift Letter" and a "Buydown Agreement." The HUD-1 settlement statement included line items entitled "Nehemiah Credit" and "Nehemiah processing fee" delineating the gifted down payment and associated service fee, respectively, as well as a line item entitled "loan discount" delineating the cost of the 3:2:1 buydown. The "Gift Letter" acknowledged the Endls' receipt of the gifted down payment from Nehemiah. The "Buydown Agreement" set forth the terms of the 3:2:1 buydown and expressly stated that Dominion Homes paid DHFS to obtain the buydown on the Endls' behalf. Christopher and Amanda both testified they did not understand the figures on the HUD-1 statement related to the "Nehemiah Credit" or the "loan discount." Although they were afforded the opportunity to do so, neither asked any questions about these financing options. The Endls were also provided a copy of the appraisal at the closing.
 {¶ 29} In its motion for summary judgment, defendant argues that the Endls cannot prove their claims for fraud or negligent misrepresentation because they cannot establish the "justifiable reliance" element of their claims. Specifically, defendant contends there is no evidence that the Endls relied upon the appraisal report before agreeing to a purchase price or entering into their agreements with the Dominion defendants. *Page 14 
 {¶ 30} In Washington Mut. Bank v. Smith, Lake App. No. 2001-L-238, 2002-Ohio-6910, the court addressed whether the purchaser of a residential property may assert a claim for negligent misrepresentation against a real estate appraiser retained for the benefit of the lender. The court, noting there were no Ohio cases directly on point, cited a Wisconsin appeals court decision which held that the appraiser "`should have foreseen that a prospective buyer of the property being appraised was "within the ambit" of harm which would result from a carelessly done appraisal.'" Id., at ¶ 25, quoting Costa v. Neiman
(Wis.App.1985), 123 Wis.2d 410, 366 N.W.2d 896, 899.
 {¶ 31} However, the court stated that while it agreed with theCosta court that an appraiser preparing a report for a lending institution should anticipate that the purchaser of the property listed on the appraisal form could be within the limited class of persons who would rely on the appraisal, such agreement should not be read as a broad statement implying that in any instance where a real estate appraiser errs in preparing an appraisal for a lending institution, the appraiser would be liable to the ultimate purchaser of the property for any pecuniary losses incurred by the purchaser with respect to that transaction. Id. at ¶ 26. Rather, the court determined the purchaser must demonstrate that he or she justifiably relied on the appraisal in order to be entitled to recovery from the appraiser. Id.
 {¶ 32} The court noted that "[generally, when a purchaser has signed a contract to purchase the subject property before the appraisal report was prepared, he will be hard pressed to demonstrate that he relied in any manner on the appraisal. In other words, the application of Section 522[1] [of the Restatement of Torts] to fact patterns similar to that of *Page 15 
this case does not relieve purchasers from their obligation to exercise their independent judgment in determining the value of the home they intend to purchase." Id. at ¶ 27. The court further noted, however, that it "can foresee circumstances where an unsophisticated consumer could be duped into the purchase of an overpriced property acting in reliance on an appraisal that was negligently or fraudulently prepared. Under this narrow set of circumstances, where the purchaser can demonstrate reliance on the appraisal, recovery from the appraiser may be appropriate." Id.
 {¶ 33} The court further noted that in their motion for summary judgment, the appraisers merely raised the issue of whether the purchasers relied on the appraisal in purchasing the property; they did not point to evidentiary materials of the type listed in Civ.R. 56(C) demonstrating that there were no genuine issues of material fact concerning the reliance element of the case. Id. at ¶ 28. Accordingly, the court concluded that the trial court properly granted summary judgment for the purchasers. However, the court further averred that "[e]vidence that [the purchasers] executed the purchase agreement before receiving a copy of the appraisal would strongly suggest to this court that [the purchasers] did not rely on the appraisal, but [the appraisers] have failed to point to such evidence." Id. at ¶ 29.
 {¶ 34} Here, unlike the appraisers in Washington Mutual, defendant points to specific evidence establishing that the Endls executed the purchase agreement before receiving a copy of the appraisal and that they did not rely on the appraisal in deciding to purchase the home. In their depositions, the Endls both admit that the appraisal was performed after they entered into the purchase contract. Indeed, the appraisal report is dated February 26, 2003, well over a month after they executed the contract. In addition, *Page 16 
the Endls acknowledge that they did not obtain a copy of the appraisal before closing on the home, despite being advised that they had a right to do so. Indeed, Christopher admits that he never requested a copy of the appraisal because "he didn't think there was a reason for it. It didn't think we needed a copy of it." (Tr. 162, 191.) In addition, he states that he did not see the appraisal before signing the purchase agreement or the financing contract with DHFS. He further avers that he did not rely on any alleged misrepresentation, either written or oral, from defendant at the time he entered into the purchase contract. He also acknowledges that he has no evidence to support the claim that defendant purposely overvalued his home. Similarly, Amanda admits that the appraisal was performed after they entered into the purchase contract, that she did not read the appraisal before closing on the home, and that she did not rely on it in purchasing the home.
 {¶ 35} Defendant's argument, coupled with this deposition testimony, satisfies defendant's initial burden of informing the trial court of the basis of their motion for summary judgment, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on the "justifiable reliance" element of the Endls' claims for fraud and negligent misrepresentation.
 {¶ 36} Thereafter, the burden shifts to the Endls, as the nonmoving party, to set forth "specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). In order to satisfy this burden, the Endls must submit evidence that, in making the decision to purchase their home, they justifiably relied upon some intentional or negligent misrepresentation included in the appraisal report prepared by defendant as to the value of the home. *Page 17 
 {¶ 37} In their memorandum contra defendant's motion for summary judgment, the Endls present general arguments made on behalf of the entire class as to defendant and the Dominion defendants collectively. More particularly, the Endls contend that they are not claiming that they relied upon the actual, written appraisal in executing the purchase contract, as defendant had not yet performed the appraisal and had not issued its report. Rather, the Endls argue that the defendant and the Dominion defendants collectively defrauded them and the other class members by inflating the appraised value of the new homes in order to obtain FHA financing and the Nehemiah grants for the down payments. The Endls maintain that they and the other class members justifiably relied upon the collective representations of all the defendants (a) that the down payment was truly a gift that did not have to be repaid, (b) that the appraisal was accurate and independent and that it was a true estimate of the market value of the property, (c) that the appraiser was not an interested or biased party, (d) that the sale price of the home was not greater than the actual market value of the home, and (e) that the special financing and down payment assistance were built back into the price of the home so as to create negative equity at the time of closing. The Endls contend that the scheme employed by the Dominion defendants would not have succeeded had defendant, as the Dominion defendants' "captive appraiser," not performed all the appraisals.
 {¶ 38} The Endls' conclusory allegations that defendant misrepresented the value of the home in the appraisal as part of a conspiracy with the Dominion defendants and that they relied on that misrepresentation in purchasing the home are insufficient to satisfy their reciprocal burden under Civ.R. 56(E). The Endls fail to address the specific argument and evidence presented by defendant and have not submitted or pointed to any *Page 18 
evidence in the record demonstrating a genuine issue of fact on the justifiable reliance element of their claims for fraud and negligent misrepresentation. As the Endls have failed to meet their reciprocal burden under Civ.R. 53(E), their claims for fraud and negligent misrepresentation fail as a matter of law. Accordingly, the trial court properly granted summary judgment for defendant on these claims.
 {¶ 39} We next address the Endls' contention that the trial court erred in granting summary judgment for defendant on their claim for civil conspiracy. "The tort of civil conspiracy is `"a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages."'" Williams v. Aetna Finance Co. (1998), 83 Ohio St.3d 464,475, quoting Kenty v. Transamerica Premium Ins. Co. (1995),72 Ohio St.3d 415, 419, quoting LeFort v. Century 21-Maitland Realty Co. (1987),32 Ohio St.3d 121, 126. (Further citations omitted.)
 {¶ 40} An underlying unlawful act is required before a claim for civil conspiracy may succeed. Williams, supra. As the Endls' claims for fraud and negligent representation fail as a matter of law, their claim for civil conspiracy necessarily fails. Burns v. Rice, 157 Ohio App.3d 620,2004-Ohio-3228, at ¶ 53. Accordingly, the trial court properly granted summary judgment for defendant on that claim.
 {¶ 41} We turn now to a review of the trial court's grant of summary judgment for defendant as to the Reces' claims for fraud and negligent misrepresentation. Defendant supported its motion for summary judgment with the depositions of Clifford and Shannon Rece, the exhibits attached to those depositions, and the affidavit of Michael Baciu, defendant's president. Those materials establish the following relevant facts. *Page 19 
 {¶ 42} On March 2, 2002, Clifford Rece and Shannon McClintock (nka Rece) entered into a Home Purchase Agreement ("purchase agreement") to purchase a newly constructed home from Dominion Homes. The salesperson for Dominion Homes stated that Dominion Homes could secure a monetary gift from a charitable organization, Nehemiah, to be utilized to pay the down payment and the Reces would have no obligation to repay any part of the gift. The salesperson also informed the Reces that DHFS offered a financing package, whereby the interest rate on a mortgage loan obtained through DHFS would increase by one percent for the first three years of the 30-year mortgage to a capped rate for the remaining 27 years (known as a "3:2:1 buydown"). The Reces applied for financing with DHFS.
 {¶ 43} Also, on March 2, 2002, the Reces executed a "Mortgage Selection Addendum," which referenced the Nehemiah program and the 3:2:1 buydown. The "Mortgage Selection Addendum" also stated that the Reces were free to apply for financing with a lender other than DHFS.
 {¶ 44} As part of the financing process with DHFS, the Reces on March 12, 2002 signed a "Buydown Disclosure," an "Appraisal Disclosure" and an ABD. The "Buydown Disclosure" delineated the specifics of the 3:2:1 buydown, including the total cost of the buydown. The "Appraisal Disclosure" informed the Reces they were entitled to a copy of the appraisal report obtained in connection with their loan application. The ABD disclosed that Dominion Homes was affiliated through common ownership with DHFS, but that financing through DHFS was not required. The ABD also identified defendant, under the category of "Service Providers," as the appraiser/inspector. The ABD stated that "[DHFS] is allowed to require the use of an attorney, a credit reporting agency and real estate *Page 20 
appraiser to represent the lender's interest." The Reces signed the acknowledgement, which contains language identical to that discussed above in connection with the Endls' claims. Shannon testified that she probably did not read the ABD before signing it.
 {¶ 45} On April 10, 2002, DHFS ordered an appraisal from defendant as part of the loan underwriting process. Defendant inspected the property on April 12, 2002 and prepared a report on April 19, 2002.
 {¶ 46} The Reces closed on the home on May 28, 2002. At the closing, they signed numerous documents, including a HUD-1 settlement statement, a "Gift Letter" and a "Buydown Agreement." The HUD-1 settlement statement included line items entitled "Nehemiah Contract Funds" and "Processing Fee to Nehemiah" delineating the gifted down payment and associated service fee. The "Gift Letter" acknowledged the Reces' receipt of the gifted down payment from the Nehemiah Corporation. The "Buydown Agreement" set forth the terms of the 3:2:1 buydown and expressly stated that Dominion Homes pledged funds to DHFS on behalf of the Reces to assist them in paying the principal and interest obligation set forth in the note. Although the title officer reviewed the documents with the Reces at the closing, neither Clifford nor Shannon asked any questions. Indeed, Clifford testified that he did not read any of the documents provided at the closing; he merely followed the title officer's instructions to sign or initial the documents in designated spaces. The Reces were also provided a copy of the appraisal at the closing. Clifford testified that he looked at it, but did not question it.
 {¶ 47} In its motion for summary judgment, defendant argues that the Reces could not prove their claims for fraud or negligent misrepresentation because there is no evidence that defendant made any negligent or intentional misrepresentations to the *Page 21 
Reces upon which they may have justifiably or detrimentally relied before entering into the purchase agreement. Specifically, defendant maintains that the Reces could not have relied upon the appraisal in entering into the purchase contract because the appraisal report was not prepared until after the Reces signed the purchase agreement. In support of this argument, defendant points to the appraisal report itself, which is dated April 12, 2002, and Bachiu's affidavit in which he avers that the April 12, 2002 appraisal report was the only one prepared by defendant.
 {¶ 48} Defendant further argues that the Reces' allegations of reliance are further undercut by statements included in various documents either executed by or presented to the Reces over the course of the purchase transaction. Specifically, defendant points to the ABD, which was prepared before the appraisal was ordered and, as noted previously, notified the Reces that Dominion Homes had a business relationship with defendant and that any appraisal ordered was to protect the interests of DFHS, not the Reces. Defendant also points to the appraisal itself, which clearly states that it was prepared for the benefit of DFHS.
 {¶ 49} Defendant also points to the Reces' deposition testimony, wherein they both admit they never spoke to anyone representing defendant, never entered into a written or oral contract with defendant, and never paid defendant to perform the appraisal. Defendant also points to Clifford's testimony stating he had no evidence to support the claims against defendant and that at the time defendant prepared the appraisal, he had no reason to believe the appraisal was inflated.
 {¶ 50} Defendant's arguments, coupled with the deposition and affidavit testimony noted above, satisfy defendant's initial burden of informing the trial court of the basis of *Page 22 
their motion for summary judgment, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on the "justifiable reliance" element of the Reces' claims for fraud and negligent misrepresentation.
 {¶ 51} Thereafter, the burden shifts to the Reces, as the nonmoving party, to set forth "specific facts showing that there is a genuine issue for trial" as to the "justifiable reliance" element of their fraud and negligent misrepresentation claims.
 {¶ 52} The Reces' memorandum contra defendant's motion for summary judgment is identical to that submitted by the Endls. As did the Endls, the Reces make conclusory allegations that defendant misrepresented the value of the home in the appraisal as part of a conspiracy with the Dominion defendants and that they relied on that misrepresentation in purchasing the home. These conclusory allegations are insufficient to satisfy their reciprocal burden under Civ.R. 56(E). As did the Endls, the Reces fail to address the specific argument and evidence presented by defendant and did not submit, or point to, any evidence in the record demonstrating a genuine issue of fact on the justifiable reliance element of their claims for fraud and negligent misrepresentation. As the Reces failed to meet their reciprocal burden under Civ.R. 53(E), their claims for fraud and negligent misrepresentation fail as a matter of law. Accordingly, the trial court properly granted summary judgment for defendant on those claims.
 {¶ 53} Furthermore, for the reasons stated in our determination of the Endls' claims for civil conspiracy, we conclude that the trial court properly granted summary judgment in favor of defendant on the Reces' identical civil conspiracy claims. The second assignment of error is not well-taken. *Page 23 
 {¶ 54} For the foregoing reasons, we overrule both of plaintiffs' assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 FRENCH and McGRATH, JJ., concur.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] The court erroneously cited to Section 522; the correct citation is Section 552. *Page 1